**ISCAR, LTD., Plaintiff,**

v.

**Jacob KATZ and Niko Trade Ltd.—U.S.A., Inc., Defendants.**

**Civ. A. No. 86–4072.**

United States District Court, D. New Jersey.

July 25, 1990.

As Amended Aug. 9, 1990.

---

**340**

T.C.C. Humick, Dillon, Bitar & Luther, Morristown, N.J., for plaintiff.

Ina B. Lewisohn, Greenberg, Dauber & Epstein, Newark, N.J., for defendants Katz and Niko Trade Ltd.

## OPINION

WOLIN, District Judge.

The Court has before it a motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction. This kind of motion is not one ordinarily considered exotic. Indeed, federal courts routinely dismiss actions removed or brought pursuant to 28 U.S.C. §§ 1331 or 1332 when it is discovered that the parties are nondiverse, or that a federal question is not evident from the face of the pleadings.

The complex factual scenario that follows, however, fits into neither category. Rather it resembles that kind of freakish fact pattern conceived by a roguish law professor and typically encountered on a law school examination for Advanced Problems of Civil Procedure.

For all the reasons that follow, the Court will deny the motion to dismiss for lack of jurisdiction.

## I. BACKGROUND

Plaintiff Iscar, Ltd. ("Iscar") is an Israeli corporation that manufactures and sells carbide tools and related products throughout the world. Defendant Jacob Katz ("Katz") was an employee of Iscar from 1973 to 1984. Initially hired as a purchasing agent, Katz advanced from that position to Branch Manager in Iran (1976–79), to Sales Manager for the West Coast of the United States (1979–82), and finally to Export Manager Worldwide (1982–84). His last position at Iscar required performance in Israel.

Katz was terminated on February 29, 1984. At that time Iscar drafted and Katz signed a "Summary Concerning Yaacov Katz's Termination of Employment at ISCAR and Terms of Termination" ("Summary"). Pursuant to the Summary, Katz agreed to "sign a personal statement" which would include a promise to undertake, for a period of three years from his termination date, not to "engage in Iscar's sphere of activity nor to compete with Iscar." On March 1, 1984, in accordance with the terms of the Summary, Katz signed a "Statement and Undertaking of Confidentiality" ("Statement"). The Statement provides that the employee, upon termination of his employment, shall undertake for a period of three years from the date of termination of his employment not to engage in employment similar or identical to his work at Iscar. In addition, the employee must "guard in complete confidentiality" all information acquired during the course of his employment.

After his termination from Iscar, Katz remained in Israel and worked briefly as a political party volunteer, then as a marketing manager for an Israeli rubber company. He moved to the United States during the summer of 1985 and in September of that year formed Niko Trade Ltd.—U.S.A., Inc. ("Niko") to sell carbide cutting tools. Two months later, Katz telephoned Stef Wertheimer, the Managing Director of Iscar, to inform him that he was selling carbide tools but was "not actively soliciting Iscar's customers." On October 17, 1986 Iscar initiated suit for breach of the restrictive agreements.

Plaintiff chose to file its complaint in federal court pursuant to 28 U.S.C.

§ 1332[1] and alleged that the matter in controversy exceeded $10,000.00 and was between citizens of a state and citizens or subjects of a foreign state. Complt., ¶ 1. To demonstrate complete diversity, plaintiff stated that Iscar was an Israeli corporation with its principal place of business in Nahariya, Israel, Niko was a New Jersey corporation with its principal place of business in Wayne, New Jersey, and Katz "resides at 27 Oxbow Place, Wayne, New Jersey." Complt., ¶ 4.

In the three years that have elapsed since Iscar initiated this lawsuit, the parties have engaged in multiple proceedings before the Magistrate and in the district court. Both parties vigorously pursued discovery and plaintiff filed the first motion to compel depositions and for entry of a protective order on March 6, 1987. Defendants filed a cross-motion also to compel depositions and production of documents and requested entry of its own form of protective order. On April 25, 1987, after receipt of an unfavorable ruling from the Magistrate, Iscar appealed to the District Court. The Magistrate was affirmed by order of the Court on July 9, 1987.

On December 4, 1987 defendants moved for an order to compel previously ordered discovery. Iscar filed a cross-motion to compel discovery and requested the entry of another protective order. The Magistrate ruled on January 14, 1988.

Defendants filed a motion for summary judgment on November 4, 1988. To buttress its position that a judicial determination in regards to the validity of the post-employment restrictive covenant required application of Israeli substantive law, Katz engaged Israeli counsel.[2] After hearing oral argument from counsel, the Court issued an Opinion on May 5, 1989 and granted partial summary judgment to defendants. In that Opinion, the Court agreed with Katz that the substantive issues of the case warranted the application of Israeli substantive law. The Court applied Israeli law to the three-year covenant against competition and determined that the restrictive agreement was unenforceable. Next, the Court examined the covenant against use of confidential information. Although that agreement was deemed valid under Israeli Law, a material issue of fact remained as to whether Katz had utilized that information. Therefore, the Court declined to grant summary judgment on that issue.

Iscar immediately moved for reconsideration and reargument. That motion was denied on June 23, 1989.

Thereafter, on July 26, 1989, Iscar requested leave to amend the Complaint to add a claim for restitution. Magistrate Haneke denied the motion and Iscar filed a timely appeal. Iscar's appeal from the Magistrate's Order was initially scheduled for argument before this Court on October 10, 1989. A Final Pretrial Conference was scheduled before the Magistrate for October 13, 1989.

On October 6, 1989, however, counsel for Katz informed the Court that she had discovered, during the course of preparing the Final Pretrial Stipulation on October 5, 1989, that defendant Jacob Katz was merely a resident of the United States and not a United States citizen.

The Final Pretrial Conference before the Magistrate was hastily converted into a Status Conference. After being informed of the "new developments," the Magistrate ordered defendants to file any motions now deemed necessary, as a result of the newly

---

1. Diversity jurisdiction is governed by 28 U.S.C. § 1332 which, as amended November 18, 1988, provides,

    (a) The district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—

    *    *    *    *    *    *

    (2) citizens of a State and citizens or subjects of a foreign state;

28 U.S.C. § 1332 (1988).

2. Plaintiff's Israeli counsel, Amnon Rafael, Esq. was retained from the inception of this action.

discovered information, returnable November 27, 1989. Defendants duly filed a motion to dismiss. Since that time, all parties have briefed and rebriefed the various issues that have arisen from the revelation of Katz's true status and the impact of that status upon this Court's subject matter jurisdiction. No further submissions were accepted by the Court after January 2, 1990. Counsel, however, were permitted to argue the matter on January 26, 1990.

Currently defendants request dismissal of the complaint *only* as to defendant Katz and also request the Court to allow subsequent intervention as of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure. In support of this position, defendants contend that any jurisdictional defect present at the initiation of this action has been cured by the recent amendment of 28 U.S.C. § 1332[3] and the concomitant change in Katz's immigration status to that of "permanent resident."

## II. DISCUSSION

This case presents a novel issue. The Court must decide whether it is without jurisdiction in this matter because the parties lacked diversity four years ago, despite the fact that they are now diverse under a recent amendment to 28 U.S.C. § 1332.

Jurisdiction is normally tested "by the status of the parties at the commencement of the suit." *Field v. Volkswagenwerk AG*, 626 F.2d 293, 305 (3d Cir.1980); *see also Smith v. Sperling*, 354 U.S. 91, 93, n. 1, 77 S.Ct. 1112, 1113, n. 1, 1 L.Ed.2d 1205 (1957). As with most general principles, this one is susceptible to certain exceptions. The two that are particularly germane here are reflected in Rule 21 of the Federal Rules of Civil Procedure[4] and the rule articulated in *Grubbs v. General Electric Credit Corporation*, 405 U.S. 699, 705, 92 S.Ct. 1344, 1349, 31 L.Ed.2d 612 (1972).

It is well settled that Rule 21 invests district courts with authority to dismiss dispensable nondiverse parties at any time, even after judgment. *Publicker Indus., Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065, 1068–69 (3d Cir.1979). This Rule operates as an alternative to dismissal of the entire case by allowing the Court to dismiss only the "spoiler." Where a jurisdictional defect is recognized early in the litigation process, courts do not hesitate to dismiss the case and await refiling. This option is less attractive, however, when a court has devoted substantial judicial resources to the resolution of the matter or when the parties have already conducted discovery and are ready for trial. Although dismissal penalizes the plaintiff, whose carelessness in naming parties or in selecting the forum is the cause of the problem, dismissal well into litigation imposes costs on the defendant as well.

Recently the Supreme Court addressed the scope of a court's authority to dismiss dispensable nondiverse parties and determined that such authority is not limited to the district courts but extends to the courts of appeal as well. *Newman–Green, Inc. v. Alfonzo–Larrain*, — U.S. —, —, 109 S.Ct. 2218, 2223, 104 L.Ed.2d 893 (1989). In *Newman–Green* the Court of Appeals raised the issue of whether the district court had jurisdiction when it entered final judgment, determined that it had not, and therefore, dismissed the nondiverse party before proceeding to the merits. 832 F.2d 417, 419–20 (7th Cir.1987). After reargument, the Seventh Circuit, sitting *en banc*, held that a circuit court did not possess the power to dismiss a nondiverse party. 854 F.2d 916, 923 (7th Cir.1988). The United States Supreme Court disagreed and declared that,

Appellate-level amendments to correct jurisdictional defects may not be the most intellectually satisfying approach to

---

3. On November 19, 1988 the following language was added to section 1332,

   For purposes of this section, section 1335, and section 1441, an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled.

4. Rule 21 provides that,

   [p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just.

   Fed.R.Civ.P. 21.

the spoiler problem, but as Judge Posner eloquently noted, because 'law is an instrument of governance rather than a hymn to intellectual beauty, some consideration must be given to practicalities.' 109 S.Ct. at 2225. The Court declined to disturb "deeply rooted understanding of appellate power" and concluded that a dismissal after years of litigation would impose unnecessary and wasteful burdens on the parties, judges and other litigants waiting for judicial attention. *Id.* Moreover, the Court determined that to require a litigant to refile in district court, only to submit discovery materials previously obtained, and to proceed to a preordained judgment was unnecessary. A plaintiff "should not be compelled to jump through these judicial hoops merely for the sake of hypertechnical jurisdictional purity." *Id.*

*Newman–Green* is relevant here, not because it holds that appellate courts may dismiss a "spoiler," but because it provides guidance to lower courts enmeshed in jurisdictional thickets. The Supreme Court has declared that any court may dismiss a nondiverse party at any time, even after judgment has been entered, to preserve the court's jurisdiction. Thus, the innocent need not be sacrificed simply for the sake of jurisdictional purity; principles that assist the court in making jurisdictional determinations are not etched in stone, but are susceptible to equitable and other considerations. Courts are permitted to preserve jurisdiction and need not require litigants to relitigate matters previously decided.

These policies of fairness, judicial economy and efficiency are reflected in a similar doctrine that has evolved in removal cases. Frequently cases appear improvidently removed because the parties were nondiverse at the time of removal. In such cases, courts have held that lack of diversity jurisdiction at the time of removal is not fatal if the defect is cured before it is noticed, but prior to trial and judgment. Under those circumstances the court has jurisdiction to enter judgment. *Knop v. McMahan,* 872 F.2d 1132, 1138 (3d Cir.1989) (quoting 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3723 at 319

(West 2d ed. 1985)); *see also Grubbs,* 405 U.S. at 705, 92 S.Ct. at 1349 (jurisdiction must exist at time of judgment); *Local Union 598 v. J.A. Jones Const. Co.,* 846 F.2d 1213, 1215 (9th Cir.), *aff'd,* 488 U.S. 881, 109 S.Ct. 210, 102 L.Ed.2d 202 (1988) (judgment upheld where jurisdictional defect is cured prior dismissal on the merits); *Smith v. City of Picayune,* 795 F.2d 482, 485 (5th Cir.1986) (on review, the court must assess jurisdictional challenges according to the complaint as it existed at the time of judgment, rather than at the time of removal); *Bernstein v. Lind–Waldock & Co.,* 738 F.2d 179, 185 (7th Cir.1984) (plaintiff's decision to add federal cause of action to improperly removed petition conferred original jurisdiction on the court); *Riggs v. Island Creek Coal Co.,* 542 F.2d 339, 342 (6th Cir.1976) ("defendant was estopped from asserting absence of diversity of citizenship where no objection to the court's jurisdiction was raised until after the date of judgment and where it is clear that at the time of judgment diversity of citizenship did in fact exist"); *cf. American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951).

In *Finn,* the United States Supreme Court concluded that a defendant had improperly removed a state action to federal court under 28 U.S.C. § 1441(c) because the plaintiff's complaint did not allege a "separate and independent" removable claim. The Supreme Court therefore reversed the Court of Appeals and remanded with instructions for the district court to vacate the judgment and, if no steps were taken by the parties to cure the jurisdictional deficiency, to remand the matter to the appropriate state court. In its discussion of jurisdiction, the Court stated:

> There are cases which uphold judgments in the district courts even though there was no right to removal. In those cases the federal trial court would have had original jurisdiction of the controversy had it been brought in federal court in the posture it had at the time of the actual trial of the cause or of the entry of judgment. **That is, if the litigation had been initiated in the federal court**

**on the issues and between the parties that comprised the case at the time of trial or judgment, the federal court would have had cognizance of the case.** *Id.* at 16, 71 S.Ct. at 541 (footnote omitted) (emphasis added). Thus, in *Finn*, the Supreme Court found jurisdiction to be lacking because of the presence of nondiverse parties not only at the time of removal, but also at the time of judgment. *Finn* implies, however, that although jurisdiction may have been lacking at the time of removal, if the district court had obtained jurisdiction over the parties at the time of trial, the court would have had jurisdiction to enter judgment.

The Supreme Court faced a similar situation in *Grubbs v. General Electric Credit Corporation,* 405 U.S. 699, 92 S.Ct. 1344, 31 L.Ed.2d 612 (1972). There, the Court determined that although the case may have been improperly removed by the United States, a party that had been joined through interpleader—"a spurious basis for join[der],"—the district court had jurisdiction to render judgment as to the "plaintiff-counter-defendant, the defendant-counterclaimant, and the additional counter-defendant" who were diverse for purposes of 28 U.S.C. § 1332. 405 U.S. at 702–05, 92 S.Ct. at 1347–49. In reaching its decision, the Supreme Court relied upon the rule established in *Finn* that jurisdiction must exist at the time of judgment. Therefore, the Supreme Court concluded that,

> whether or not the case was properly removed, the District Court did have jurisdiction of the parties at the time it entered judgment. Under such circumstances the validity of the removal procedure followed may not be raised for the first time on appeal....

405 U.S. at 702, 92 S.Ct. at 1347.

Judicial reliance upon Rule 21 and the principles established in *Finn* and followed in *Grubbs* springs from the twin goals of judicial economy and efficiency with a sprinkling of fairness. An impartial reading of precedent indicates to this Court that although equity is not a substitute for sub-

ject matter jurisdiction, where complete diversity exists at the time of judgment or trial, it would be a waste of judicial resources to dismiss a case in its entirety because it lacked diversity from the moment of its inception. This principle was stressed recently by the Third Circuit in *Knop v. McMahan,* 872 F.2d 1132 (3d Cir. 1989). There, the Third Circuit *sua sponte* raised the issue of subject matter jurisdiction in a case that had gone through complete discovery, trial and judgment. The Court determined that as long as the district court had diversity jurisdiction over the parties at the time of trial, any jurisdictional defects that existed at the time of removal could not cause the judgment to be vacated later. In reaching its decision, the Court relied upon the reasoning of the Supreme Court explained in *Finn* and followed in *Grubbs* and stated,

> To permit a case in which there is complete diversity throughout trial to proceed to judgment and then cancel the effect of that judgment and relegate the parties to a new trial in state court because of a brief lack of complete diversity at the beginning of the case would be a waste of judicial resources.

872 F.2d at 1139 n. 16. The Third Circuit's decision in *Knop,* as well as those of the Supreme Court upon which it relies, is grounded in sound principles of judicial economy and efficiency that apply here.

This factually complex litigation has been partially adjudicated by a court that would have jurisdiction over the parties if the case were tried tomorrow or if judgment were entered today. The parties, as well as the Court, have devoted extensive resources to its adjudication. Indeed, the dispute entered its fourth year of litigation before the absence of diversity jurisdiction was noted. Discovery has been completed and a trial is imminent. To dismiss the case in its entirety now because the plaintiff did not fully set out Katz's citizenship in the complaint, nor realize the inadvertent error later, and because defendants and the original district court[5] did not make them

---

**5.** By Order dated January 4, 1988 of the Hon. John F. Gerry, Chief Judge of the United States

District Courts, District of New Jersey, this case

do so would accomplish nothing. Indeed, dismissal would only cause plaintiff to refile its complaint in state court, then defendants would remove to district court, both parties would present previously obtained discovery materials and the district court would proceed to a preordained partial summary judgment. *Cf. Newman–Green,* 109 S.Ct. at 2225.

Neither party has suggested that the Court retain the complaint without change. Rather, the parties' dispute has centered on the status of Katz as a party to this litigation. Defendant suggests that Katz is a dispensable party and therefore the Court may, pursuant to Rule 21, simply excise Katz from the litigation, relate the dismissal back to the date the complaint was filed and proceed. In opposition, plaintiff asserts that Katz is an indispensable party whose misjoinder destroyed diversity at the time the complaint was filed and whose presence now requires the Court to dismiss the entire complaint. This Court need not determine whether Katz is an indispensable party, for his presence does not destroy diversity jurisdiction now. *Shiffler v. Equitable Life Assur. Soc. of U.S.,* 838 F.2d 78, 82 n. 5 (3d Cir.1988) (dismissal of a party is not required where an independent basis for jurisdiction exists).

This is not a case where the parties have attempted to create diversity by a subsequent change of domicile by one of the parties or through collusion or some other event. *See, e.g., Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969) (where Texas resident took assignment interest, for one dollar consideration, of Panama corporation under contract for sale of stock to Haitian corporation, after which Texas resident reassigned 95% of that interest to Panama corporation, Texan was improperly or collusively made a party and the district court was without jurisdiction to enter judgment); 28 U.S.C. § 1359 (1988); *Field v. Volkswagenwerk AG,* 626 F.2d 293, 304 (3d Cir.1980) (where administrator of estate is found to be nondiverse, substitution of diverse administrator will not create diversity jurisdiction). Here, the parties did nothing to create diversity. In fact they were unaware of their lack of diversity until defendants' counsel discovered that Katz did not have dual citizenship, but was in fact a citizen of Israel who resided in New Jersey. As such, under the diversity statute as it existed at the time Iscar filed this complaint, Katz was considered nondiverse from plaintiff, an Israeli corporation.

Complete diversity exists now, , not through any manipulations by defendants, but through a legislative change in the diversity statute. Congress amended the diversity statute to reflect the judgment "that the reasons for alienage jurisdiction do not apply when a citizen of a foreign state actually is a permanent resident of the United States. In that situation, it is more logical to treat the alien as a citizen of the state in which he resides." 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3604 at 60 (West Supp.1990). Under the new diversity statute, Katz is a citizen of New Jersey. Thus the parties are completely diverse, that is, all plaintiffs have different citizenship status from all defendants. *See Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806) (where there is more than one defendant, plaintiff must be capable of suing each defendant); *Hodgson v. Bowerbank,* 9 U.S. (5 Cranch) 303, 3 L.Ed. 108 (1809) (judiciary act gives circuit court jurisdiction in all suits in which an alien is proceeding against "a citizen of some one of the United States").

The Congressional amendment to the diversity statute cannot be declared a collusive action by defendants to manufacture diversity. Rather, it appears to be a fortuitous event for all parties. Katz has resided in New Jersey since 1985. In fact, his immigration status officially reflects his residency decision. He has now been declared a permanent resident of the United States. Plaintiff, apparently unaware of Katz's Israeli citizenship, chose a federal forum for this action. This Court believes that the principles illuminated in *Newman–Green, Finn,* and *Grubbs,* impel this Court

was reassigned from a sister court of coordinate jurisdiction to this Court.

to refrain from dismissal of this action. The parties have completed discovery, the Court has entered partial summary judgment, let the trial begin. This Court's decision prejudices neither party. Jurisdictional purity will not be sullied, nor jurisdictional doctrine muddied, if this case stays here.

One wrinkle remains in this litigation—the validity of the Court's prior judgments in this case. The diversity statute became effective May 18, 1989. Because complete diversity exists now, the Court reaffirms and reinstates its prior judgments at this time. The Court will address Iscar's appeal from the Magistrate's Order of August 25, 1989 by separate decision.

## III. CONCLUSION

For all the reasons stated, the Court will deny defendants' motion for partial dismissal as well as plaintiff's cross-motion for dismissal of the entire action. All prior judgments of the Court will be reaffirmed and reinstated as of this date. This matter will be scheduled for trial on the issues that remain.