Manjit **SINGH**, as Administrator of the Estate of Ram P. Singh, Deceased, Appellant

v.

**DAIMLER–BENZ AG; Mercedes–Benz of North America, Inc.**

No. 93–1007.

United States Court of Appeals, Third Circuit.

Argued July 13, 1993.

Decided Nov. 15, 1993.

---

**304**

Terrance A. Kline (argued), George C. McFarland, Jr., Kassab, Archbold, Jackson & O'Brien, Media, PA, for appellant.

R. Mark Armbrust (argued), Daniel W. Cantú–Hertzler, Miller Dunham Doering & Munson, A Professional Corp., Philadelphia, PA, for appellee.

Before: SLOVITER, Chief Judge, NYGAARD and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Chief Judge.

In this appeal we must determine, apparently for the first time by an appellate court, whether the amendment to the diversity jurisdiction statute defining a permanent resident alien as a citizen for diversity purposes gives a federal court subject matter jurisdiction over a case brought by a permanent resident alien against two defendants, one of whom is a nonresident alien. The district court saw no impediment to diversity jurisdiction, declined the plaintiff's motion to remand to state court, and ultimately entered judgment on a jury verdict for the defendants. Plaintiff's appeal is limited to the issue of the district court's subject matter jurisdiction.

## I.

### *Facts and Procedural History*

Plaintiff Manjit Singh filed a products liability action individually and as administrator of the estate of his father, who died after suffering massive injuries when the Mercedes sedan he was driving slid off a snowy highway in Pennsylvania on November 22, 1989. The complaint alleges that there were design and manufacturing defects in the automobile which caused decedent's death. Singh is a citizen of India, admitted to the United States for permanent residence and domiciled in Virginia, as was his father. It is the decedent's residence and citizenship which control citizenship for diversity purposes. *See* 28 U.S.C. § 1332(c)(2) (1988). Singh's mother, with the same citizenship and residence, also was a plaintiff at the outset of this action, claiming for negligent infliction of emotional distress.

The defendants are the automobile's foreign manufacturer, Daimler–Benz, AG, a German corporation, and its American distributor, Mercedes–Benz of North America, Inc., a Delaware corporation with its principal place of business in New Jersey.

The action was originally filed in the Court of Common Pleas of Philadelphia County and was removed on the basis of diversity of citizenship. Plaintiffs moved to remand the case, arguing that there was not complete diversity of citizenship because the plaintiffs as well as the defendant Daimler–Benz are aliens. Defendants asserted federal jurisdiction based on the 1988 amendment to the diversity statute, which provides that a permanent resident alien of the United States is "deemed a citizen of the State in which such alien is domiciled." 28 U.S.C. § 1332(a) (1988).

The district court denied plaintiffs' motion to remand, noting that the states of domicile of the permanent resident alien plaintiffs (Virginia) and Mercedes, the citizen defendant, (Delaware and New Jersey), are not the same. The court declined to deviate from the plain language of section 1332(a) as

amended, finding that "the best evidence of Congress' intent ... is found in the text of the statute itself." *Singh v. Daimler–Benz, AG,* 800 F.Supp. 260, 261 (E.D.Pa.1992) (quotation omitted). The court rejected the holding of the district court in *Arai v. Tachibana,* 778 F.Supp. 1535 (D.Haw.1991), that there was no diversity jurisdiction where, as here, there were nonresident aliens and a resident alien as opposing parties. The district court then denied plaintiffs' motion to certify the question for an immediate appeal to this court.

After the individual claims by Manjit Singh and his mother were dismissed by stipulation, a jury trial was held on the representative claims asserted by Manjit Singh, and judgment was entered for the defendants. Singh appeals. Our review is plenary. *See York Bank & Trust Co. v. Federal Sav. & Loan Ins. Corp.,* 851 F.2d 637, 638 (3d Cir. 1988), *cert. denied,* 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989).

## II.

### Discussion

■ The Constitution provides that federal courts can have jurisdiction over suits "between a State, or the Citizens thereof, and foreign States, Citizens or Subjects." U.S. Const. art. III, § 2. The first Judiciary Act of 1789 implemented this authority by providing that federal courts have jurisdiction over suits "where ... an alien is a party, or the suit is between a citizen of the State where the suit is brought, and a citizen of another State." Act of Sept. 24, 1789, ch. 20, Sec. 11, 1 Stat. 73, 78. In an early interpretation of the diversity statute, the Court enunciated the requirement of complete diversity, i.e. that each plaintiff must be able to sue each defendant. *See Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). It has since clarified that the complete diversity requirement is statutory, because Article III only requires minimal diversity. *See State Farm Fire & Cas. Co. v. Tashire,* 386 U.S. 523, 531, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967). Thus Congress is empowered to authorize federal jurisdiction on the basis of diversity as long as at least one plaintiff and one defendant are diverse. *See id.* With respect to aliens, the Supreme

Court early construed Article III as authorizing diversity suits only between a citizen of a state and an alien, *see Mossman v. Higginson,* 4 U.S. (4 Dall.) 12, 14, 1 L.Ed. 720 (1800) (citing Judiciary Act of 1789, ch. 20, sec. 11, 1 Stat. 73, 78); *Montalet v. Murray,* 8 U.S. (4 Cranch) 46, 47, 2 L.Ed. 545 (1807); *Hodgson v. Bowerbank,* 9 U.S. (5 Cranch) 303, 304, 3 L.Ed. 108 (1809), and the statute now does not expressly provide that one alien may·sue another in federal court. *See* 28 U.S.C. § 1332(a)(2) (granting jurisdiction in cases between "citizens of a State and citizens or subjects of a foreign state.")

More than a decade ago when confronted with a case where an alien was one of several plaintiffs suing an alien defendant, we held that the complete diversity required under *Strawbridge* was lacking. *See Field v. Volkswagenwerk AG,* 626 F.2d 293, 296 (3d Cir. 1980). Other circuits have also construed the diversity statute to apply the complete diversity requirement to aliens. *See, e.g., Faysound Ltd. v. United Coconut Chemicals, Inc.,* 878 F.2d 290, 294–95 (9th Cir.1989); *Eze v. Yellow Cab Co. of Alexandria, Va., Inc.,* 782 F.2d 1064, 1065 (D.C.Cir.1986); *Chick Kam Choo v. Exxon Corp.,* 764 F.2d 1148, 1151–52 (5th Cir.1985).

In light of these precedents, plaintiff argues that because the decedent Ram Singh was an alien (a permanent resident alien) and defendant Daimler–Benz is an alien (a nonresident alien), complete diversity is lacking and there is no subject matter jurisdiction. However, the cases upon which Singh relies construed the diversity statute before Congress expanded the definition of "citizen" for purposes of diversity to provide that "an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled." 28 U.S.C. § 1332(a) (1988). The district court relied on the plain language of the new provision to find that the Singhs (including, significantly, the decedent) are deemed citizens of Virginia. The court concluded that as one defendant is an alien and the other is an American corporation with citizenship in Delaware and New Jersey, "there is complete diversity between the parties." App. at 90. The court reiterated this view on recon-

sideration. *See Singh v. Daimler–Benz, AG,* 800 F.Supp. 260 (E.D.Pa.1992).

Plaintiff contends that the district court's reading of the statute is erroneous. He claims that it will lead to a dramatic increase in the number of diversity suits maintained in federal court, and that Congress could not have intended, nor did it have the power, to overrule the longstanding prohibition of suits between aliens. Under plaintiff's view, the new provision was intended only to bar suits where a permanent resident alien sues a citizen of the same state, and did not establish a new definition of citizenship for permanent resident aliens in all cases.

### A. *Statutory Language*

 In resolving a question of statutory interpretation we turn first to the language of the provision. *See Commissioner v. Engle,* 464 U.S. 206, 214, 104 S.Ct. 597, 602, 78 L.Ed.2d 420 (1984). We find no support there for plaintiff's position. The amended diversity jurisdiction statute reads:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000 ... and is between—

(1) citizens of different States;

(2) citizens of a State and citizens or subjects of a foreign state;

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

(4) a foreign state ... as plaintiff and citizens of a State or of different States.

*For the purposes of this section, section 1335, and section 1441, an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled.*

28 U.S.C. § 1332(a) (1988) (emphasis added).

There is no ambiguity in the emphasized language. With this new provision, which became effective on May 18, 1989, *see* David D. Siegel, *Commentary on 1988 Revision,* 28

U.S.C.A. § 1332, at 5 (West.Supp.1993), Congress directed that permanent resident aliens, who heretofore were considered "citizens or subjects of a foreign state" for purposes of diversity jurisdiction, are now considered "citizen[s] of the State in which [they are] domiciled." The provision represents a straightforward congressional direction.

Plaintiff concedes, at least implicitly, that this is the plain reading of the statute. He argues, however, that such a construction is contrary to the legislative intent, and that, if adhered to, it would lead to an unconstitutional result. Because the statutory language is plain, our inquiry should be complete. *See Garcia v. United States,* 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984). Nonetheless, we will proceed to consider the legislative history, as it may provide some helpful insight in our statutory construction. *See Darby v. Cisneros,* —— U.S. ——, 113 S.Ct. 2539, 2545, 125 L.Ed.2d 113 (1993) ("Recourse to the legislative history ... is unnecessary in light of the plain meaning of the statutory text. Nevertheless, we consider that history briefly because both sides have spent much of their time arguing about its implications."); *Lancashire Coal Co. v. Secretary of Labor,* 968 F.2d 388, 391 (3d Cir.1992).

### B. *Legislative History*

The provision deeming a permanent resident alien a state citizen for the purpose of diversity was included in the Judicial Improvements and Access to Justice Act (1988 Act), Pub.L. No. 100–702, 102 Stat. 4642 (1988). The 1988 Act follows verbatim the language of S. 1482, 100th Cong., 2d Sess. (1988), *reprinted in* 134 Cong.Rec. 31,040 (1988), described as an "omnibus court reform bill," 134 Cong.Rec. 31,049 (1988) (statement of Sen. Heflin), which was considered by the Senate on October 14, 1988, *id.* at 31,039, and which had a somewhat tangled legislative history.[1]

---

1. *See* Cong. Index (CCH) 35,062, 35,102 (1988) (chronology of the history of H.R. 3152 and H.R. 4807); 134 Cong.Rec. 31,050 (1988) (statement of Sen. Heflin) (describing House and Senate treatment of H.R. 3152, H.R. 4807 and S. 1482);

John B. Oakley, *Recent Statutory Changes in the Law of Federal Jurisdiction and Venue: The Judicial Improvements Acts of 1988 and 1990,* 24 U.C. Davis L.Rev. 735, 736 n. 1 (1991).

Although Singh directs us to language in the legislative history of the 1988 Act expressing concern about the "delay caused by rising caseloads," H.R.Rep. No. 889, 100th Cong., 2d Sess. 23 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5982, 5984, we note that these remarks were taken from the House Report and were therefore directed to the House version of the bill. The anti-diversity sentiment of some House members is reflected in a provision of one of the earlier versions of the bill which would have virtually eliminated diversity jurisdiction, *see id.* at 25, 1988 U.S.C.C.A.N. at 5985-86,[2] a bill reported favorably by the Subcommittee on Courts, Civil Rights, and the Administration of Justice of the House Committee on the Judiciary, *see id.* at 45, *reprinted in* 1988 U.S.C.C.A.N. at 6005. The full Committee deleted that provision, adopting instead an increase in the amount in controversy. *See id.* at 25, *reprinted in* 1988 U.S.C.C.A.N. at 5985-86. We cannot glean much assistance about the purpose for the permanent resident alien provision from the House Report, because that provision was not in the House proposal.

As Senator Heflin explained, S. 1482 was the "culmination of many months of negotiation with members of the Subcommittee on Courts and Administrative Practice, the Senate Judiciary Committee, and the House of Representatives." 134 Cong.Rec. 31,050 (1988). The claims for the bill in the Senate with respect to diversity were considerably more modest than Singh suggests. Senator Heflin, the floor sponsor of S. 1482, introduced the bill by stating "[t]his bill provides a procedure for the promulgation of rules issued by the courts, establishes a Committee of the Judicial Conference to study the problems and needs of the Federal judiciary, *makes modest adjustments to the scope of diversity jurisdiction,* provides for the early resolution of district court jurisdictional issues under the Tucker Act, reauthorizes the State justice institute, amends both the Court Interpreter and Jury Selection and Service Acts, and makes other improvements proposed by the Judicial Conference." *Id.* (emphasis added).

The most far reaching feature of Title II, the title of the ten title bill that deals with diversity jurisdiction, was that raising the amount in controversy for diversity purposes from $10,000 to $50,000. The House Report gives two reasons for the increase. One was to reduce the "basis for Federal court jurisdiction based solely on diversity of citizenship." H.R.Rep. No. 889, *supra,* at 44, *reprinted in* 1988 U.S.C.C.A.N. at 6005. The other was to adjust for the effect of inflation since 1958 when the $10,000 threshold was enacted. Although Senator Heflin noted in reviewing the various titles of the bill that the increase in amount in controversy was estimated by some to reduce the diversity caseload by up to 40 percent (an estimate included in the House report), he described the provisions of Title II of the bill relating to diversity jurisdiction as making "*modest amendments* to reduce the basis for federal court jurisdiction based solely on diversity of citizenship." 134 Cong.Rec. 31,051 (1988) (emphasis added). A similar approach was taken by Senator Thurmond who, when speaking on the floor of the Senate on the increase in the amount in controversy, stated "[t]his provision simply reflects the present diversity amount adjusted for inflation." *Id.* at 31,066.

Nothing in the remarks of Senator Heflin or any of the other three members of the Senate Judiciary Committee who spoke briefly in favor of the bill on the floor supports Singh's argument that the overall goal of the bill was "to reduce diversity jurisdiction to relieve caseload pressures." Appellant's Brief at 27. The overall bill was clearly designed to improve federal court administration and efficiency, including, for example, a provision permitting a controlled experiment in court-annexed arbitration which Senator Grassley lauded. *See* 134 Cong.Rec. 31,067 (1988) (discussing § 901, 102 Stat. at 4659-64 (codified at 28 U.S.C. §§ 651-58)).

There were two other provisions in Title II of S. 1482 relevant to diversity jurisdiction. One altered the citizenship rules for cases involving multistate corporations (who will hereafter be deemed citizens of any state in which they have been incorporated as well as

---

**2.** *See* H.R. 4807, 100th Cong., 2d Sess. § 311

(1988) (version of June 14, 1988).

of their principal place of business), insurers (in direct actions the citizenship of the insured will also be attributed to the insurer), and representative parties—estates, infants, and incompetents (whose citizenship will be determined by reference to the citizenship of the "represented" party). *See* 134 Cong.Rec. 31,051 (1988) (Statement of Sen. Heflin) (discussing § 202, 102 Stat. at 4646 (codified at 28 U.S.C. § 1332(a))). The latter measure, one of those added by the Senate, was designed to eliminate the artificial manufacture of diversity by naming representatives from other states, *see id.* at 31,055, but its impact on caseload was not discussed.

The third change in existing law effected by Title II of S. 1482 was the provision dealing with the citizenship of permanent resident aliens, the provision at issue here. Because the permanent resident alien provision was not part of the bill at the time the House Report was written, and there was no Senate Report, there is only scant legislative history. This provision appears to have been added by Senator Heflin very late in the process of congressional consideration of the version of S. 1482 as enacted, and the only references to the provision in the Congressional Record are on the day it was adopted unanimously by the Senate.

The section-by-section analysis that Senator Heflin introduced into the Congressional Record first noted that "large numbers of persons" are permanent resident aliens, and then continued, "[t]here is no apparent reason why actions between persons who are permanent residents of the same State should be heard by Federal courts merely because one of them remains a citizen or subject of a foreign state." 134 Cong.Rec. 31,055 (1988). No senator spoke to this provision.

The introduction of the Senate bill containing the permanent resident alien provision followed shortly after the September 1988 meeting of the Judicial Conference of the United States at which the Conference agreed to recommend "that Congress amend 28 U.S.C. 1332(a) to treat a permanent resident alien as a citizen of the state of his or her domicile." Judicial Conference of the United States, *Reports of the Proceedings of the Judicial Conference of the United States Held in Washington, D.C. March 15, 1988 and September 14, 1988, at 77* (1988) (*Proceedings of the Judicial Conference* ). The Conference action in turn followed the report and recommendation of its Committee on Federal–State Jurisdiction.

Because the Committee's consideration of this issue was the genesis of the statutory provision, we include the relevant portion of its Report:

> 28 U.S.C. 1332(a)(2) currently gives the district courts diversity jurisdiction over actions between citizens of a State and citizens or subjects of a foreign state. Section 1332(a)(3) covers actions between citizens of different States in which citizens or subjects of a foreign State are parties. Diversity jurisdiction exists under these provisions even though the alien may have been admitted to the United States as a permanent resident. Review of immigration statistics indicates that a large number of persons falls within this category.
>
> There seems to be no reason why actions involving persons who are permanent residents of the United States should be heard by Federal courts merely because one of them remains a citizen or subject of a foreign state or has not yet become a citizen of the United States.

Report of the Judicial Conference Committee on Federal–State Jurisdiction 6–7 (Sept.1988) (Federal–State Committee), *summarized in Proceedings of the Judicial Conference, supra,* at 76–77. The above language of the Judicial Conference's Committee Report was substantially adopted in the Senate's section-by-section analysis of S. 1482. *See* 134 Cong. Rec. 31,055 (1988).

There is ample basis in the report of the Federal–State Committee to support Singh's view that the reduction of the diversity caseload was a factor in the proposed change as to the treatment of permanent resident aliens. *See* Federal–State Committee, *supra,* at 7 ("The Committee believes that a proposal to eliminate diversity of citizenship jurisdiction under these circumstances is consistent with recent Judicial Conference positions to encourage justifiable piecemeal reductions in diversity jurisdiction in the face

of the substantial opposition to total abolition.").

It is far less clear that the Judicial Conference Committee's perspective represented the view of the Senate. Senator Heflin did not espouse it, and in fact his comments on Title II of the bill dealing with diversity jurisdiction noted that "[w]hile the Judicial Conference of the United States has long supported total abolition of diversity jurisdiction, such measures are very controversial." 134 Cong.Rec. 31,051 (1988).

The Senate's consideration of the resident alien provision focused on the incongruity of permitting a permanent resident alien living next door to a citizen to invoke federal jurisdiction for a dispute between them while denying a citizen living across the street the same privilege. *See* 134 Cong.Rec. 31,055 (1988). This does not mean that the reduction in diversity caseload may not have been a factor in the acceptance of the provision. However, we have no basis to jump from the "modest" adjustment to the scope of diversity jurisdiction, which the provision undeniably accomplished, to Singh's claim that construing the alien permanent resident provision according to its plain language would contravene the legislative intent.

The 1988 Act also contained several provisions relating to procedure in removal of cases from state to federal court, but even those will not necessarily reduce diversity cases in a significant measure. The Act imposed an absolute one year time limit to remove a case from state to federal court on the basis of diversity of citizenship, *see* § 1016(b)(2)(B), 102 Stat. at 4669 (codified at 28 U.S.C. § 1446(b)), thereby changing the prior procedure permitting a case to be removed after the claims against defendants whose presence destroyed complete diversity were dismissed or dropped. While acknowledging that this provision would produce "a modest curtailment in access to diversity jurisdiction," the House Report emphasized instead that the change would prevent "removal after substantial progress has been made

in state court." H.R.Rep. No. 889, *supra* at 72, *reprinted in* 1988 U.S.C.C.A.N. at 6032.

A related change was the inclusion of a provision requiring that the citizenship of defendants sued under fictitious names be disregarded, abrogating the Ninth Circuit's practice of permitting claims in California against a Doe defendant automatically to destroy diversity. *See* § 1016(a), 102 Stat. at 4669, (codified at 28 U.S.C. § 1441(a)); *see Oakley, supra,* at 753–56. It would not be surprising if this amendment requiring courts to ignore the citizenship of fictitious defendants increased, rather than decreased, the number of diversity cases. There is even some question if the impact on the federal courts' caseload of the increase in the amount in controversy requirement to $50,000, the one provision clearly designed to affect the number of diversity cases, will approach the predicted reduction.[3]

In short, while we agree with Singh that there is nothing in the legislative history of the 1988 Act that suggests that Congress intended the permanent resident alien provision to expand diversity jurisdiction, there is also nothing to support Singh's view that the entire 1988 Act was characterized by a "clarity of purpose" to reduce diversity jurisdiction. Appellant's Reply Brief at 3 n. 1. Instead the Act is more accurately viewed as Senator Heflin described it, "a noncontroversial judicial improvements bill with many authors." 134 Cong.Rec. 31,050 (1988).

We recognize that Congress may not have intended to enlarge diversity jurisdiction even in the limited situation presented by this case, but the possible unintended effect of permitting a permanent resident alien to invoke diversity jurisdiction when that party could not have done so before the amendment is not sufficient reason for us to torture or limit the statutory language. *See Pittston Coal Group v. Sebben,* 488 U.S. 105, 115, 109 S.Ct. 414, 420, 102 L.Ed.2d 408 (1988) ("It is not the law that a statute can have no effects which are not explicitly mentioned in its legislative history...."). Although Congress

---

**3.** At least one commentator believes that even the fivefold increase in the amount in controversy, which one would expect to have a substantial effect on the federal court dockets, has not had

and will not have a great effect. *See* 1 James Wm. Moore et al., *Moore's Federal Practice* ¶ 0.71[4.–7] (2d ed. 1993) (*Moore's* ).

has from time to time recognized the need to restrict the availability of diversity jurisdiction, we are not free to go farther than it has chosen to go. *See Schwartz v. Electronic Data Systems, Inc.*, 913 F.2d 279, 284 (6th Cir.1990). Had Congress intended to limit the language of the deeming provision to cases in which a permanent resident alien of a state is suing a citizen or another permanent resident of the same state, it could easily have so provided by limiting the deeming provision to be applicable only to section 1332(a)(2). Instead, Congress's language is broad, and without limitation provides that "for purposes of this section," i.e., all of section 1332(a), a permanent resident alien "shall be deemed a citizen of the State in which such alien is domiciled." 28 U.S.C. § 1332(a) (1988). Thus this includes as well section 1332(a)(3) which, when the deeming provision is applied, fits precisely this case ("citizens of different states [Singh (Virginia) v. Mercedes (Delaware and New Jersey)] and in which citizens or subjects of a foreign state [Daimler] are additional parties"). We must construe this as written, particularly because the legislative history does not provide an overriding reason not to do so. *See Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 907, 912–913 (3d Cir.1990).

### C. *Congressional Power to Define Citizenship*

Singh does not argue explicitly that as a general matter Congress does not have the power to define who or what is a citizen for purposes of diversity jurisdiction. The history of Congress's various modifications of citizenship belies any such notion. There was no statutory elaboration on the word "citizen" used in the first Judiciary Act of 1789 in the grant of jurisdiction to the federal courts of controversies "between a citizen of the State where the suit is brought, and a citizen of another State." Act of Sept. 24, 1789, ch. 20, Sec. 11, 1 Stat. 73, 78. Since then, there have been a series of amendments by Congress which elaborate on the concept of citizenship. One example is the 1940 amendment which defined "States" to include the Territories, the District of Columbia, and the Commonwealth of Puerto Rico, and consequently extended citizenship for diversity

purposes to their previously excluded citizens. *See* Act of Apr. 20, 1940, ch. 117, 54 Stat. 143 (codified at 28 U.S.C. § 1332(d)); *see also National Mut. Ins. Co. v. Tidewater Transfer Co.*, 337 U.S. 582, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949) (provision upheld by fractured Supreme Court on inconsistent rationales).

Congress's periodic revisions in the treatment of corporations for purposes of their citizenship consistently has been accepted by the courts. Thus, Congress's power to enact the 1958 amendment to section 1332(c) deeming a corporation to be a citizen not only of the state of its incorporation but also of the state of its principal place of business is unquestioned. *See, e.g., Kelly v. United States Steel Corp.*, 284 F.2d 850 (3rd Cir. 1960).

We know of no appellate court decision to consider the new statute but there are numerous district court decisions which have agreed (some in dicta) that the permanent resident alien provision must be interpreted according to its literal language. *See Iscar, Ltd. v. Katz*, 743 F.Supp. 339, 345 (D.N.J. 1990) (resident alien party who was not a permanent resident when the action was filed but became one by the time the court considered the motion to dismiss is "a citizen of New Jersey ... [and t]hus the parties are completely diverse"); *D'Arbois v. Sommelier's Cellars*, 741 F.Supp. 489, 490 (S.D.N.Y. 1990) (dictum) (although amended diversity statute could not be applied retroactively, it might have cured jurisdictional defect in case brought by alien plaintiff against permanent resident alien among others by deeming latter a citizen of a particular state); *see also Syed v. Syed*, 1991 WL 70851, at *1, 1991 U.S.Dist. LEXIS 5718, at *3 (N.D.Ill.1991) (dictum) (dismissing complaint on ground, *inter alia* that if both plaintiff and defendant were resident aliens, "the last sentence of Section 1332(a) ... [would] requir[e] that they be domiciled in different states"); *Nakanishi v. Kanko Bus Lines, Inc.*, 1991 WL 70851, at *1, 1989 U.S. Dist. LEXIS 7994, at *6 (S.D.N.Y.1989) (dictum) ("recent amendment may remove the jurisdictional bar" to action by plaintiff resident alien of New Jer-

sey against United States citizen defendants and defendant permanent resident alien of New York).

Two other courts have applied the plain meaning of the statute in cases turning on related issues, such as whether a person qualifies as a "permanent resident." For example, in a case with an alien plaintiff and as defendants a United States citizen and an alien with a work permit, the court in *Kristensen v. de Dampierre*, 1990 WL 103957, at *1, 1990 U.S.Dist. LEXIS 8976, at *4–5 (S.D.N.Y.1990), found that there was no subject matter jurisdiction, but indicated that had the defendant alien been a permanent resident, the result would have been different under the amended statute. *See also Miller v. Thermarite Pty. Ltd.*, 793 F.Supp. 306, 307–08 (S.D.Ala.1992) (same, for nonimmigrant temporary worker).

Singh does not challenge Congress's *power* to deem a permanent resident alien to be a citizen of the state of his or her domicile. In fact, Singh acknowledges that Congress could redefine permanent resident aliens to be citizens of the states of their domiciles, but seeks to limit that definition to situations where the effect will be to defeat diversity jurisdiction between a citizen of a state and an alien permanently domiciled in the same state. Appellant's Brief at 25. Singh urges this court not to apply the same deeming provision in any other context, and to follow the holding of the district court in *Arai v. Tachibana*, 778 F.Supp. 1535 (D.Haw.1991). In that case the court dismissed the complaint brought by Japanese aliens against both a Hawaii corporation and Japanese citizens who were permanent residents of Hawaii, although it acknowledged that the statutory language of the permanent resident alien provision was clear. *See also Lloyds Bank PLC v. Norkin*, 817 F.Supp. 414 (S.D.N.Y.1993) (following *Arai*).

The *Arai* court gave two reasons for its failure to follow that language, both of which Singh presses here. We have already rejected the first such reason, the inconsistency with the asserted purpose of the 1988 Act. The other reason given in *Arai* and repeated by Singh here is that any other reading would "countenance diversity jurisdiction in the situation where an alien permanently residing in one state sues an alien permanently residing in another state, a plainly unconstitutional result." Appellant's Brief at 28.

Singh warns that we are ignoring the Supreme Court's direction to avoid a construction of a statute which will lead to unconstitutional applications. *See Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988). Singh suggests that because this Court in *Field v. Volkswagenwerk AG*, 626 F.2d 293, 296 (3d Cir.1980), enunciated the principle that the complete diversity requirement denied jurisdiction "in an action by an alien against citizens of a state and another alien," we cannot apply the plain language of the statute.

The holding in *Field* is not at issue here, because the issue on appeal there was the district court's refusal to permit the resident alien plaintiff to withdraw and thereby remove the impediment to diversity jurisdiction. Nothing in *Field* suggests there is any constitutional infirmity in applying diversity jurisdiction in the instant situation, where a permanent resident alien deemed by the amended statute to be a citizen of Virginia sues a nonresident alien and a citizen of states other than Virginia. At a minimum, Congress's deeming provision falls within its power to invest the federal courts with jurisdiction when there is minimal diversity.[4]

Thus the potential unconstitutional application of the deeming provision as to the citizenship of permanent residents is limited to situations in which a permanent resident alien sues as the sole defendant either a permanent resident alien domiciled in another state or a nonresident alien. Some commentators have suggested that the plain reading of the provision in those situations

---

4. In the situations encompassed by the new provision, Congress has abrogated, albeit without discussion, the Supreme Court's consistent interpretation of the diversity statute as requiring that a citizen of a state must also be a citizen of the United States. *See, e.g., Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 828–29, 109 S.Ct. 2218, 2221, 104 L.Ed.2d 893 (1989); *Brown v. Keene*, 33 U.S. (8 Pet.) 112, 8 L.Ed. 885 (1834).

**312**

will lead to constitutional problems. *See* 1 *Moore's, supra,* ¶ 0.71[4.–7], 0.75[1.–2–2] ("unless the courts can ignore the plain language of the clause and hold that it does not apply in [the two scenarios described above], the legislation is unconstitutional"); Richard Bisio, *Changes in Diversity Jurisdiction and Removal,* 69 Mich.Bar J. 1026, 1028 (1990) ("The amendment probably oversteps the Article III constitutional grant of judicial power if it is applied to allow suits solely between aliens."); Oakley, *supra,* at 741 (provision "invites courts to adjudicate cases that may be beyond the constitutional power of the federal courts"); David D. Siegel, *Changes in Federal Jurisdiction and Practice Under the New Judicial Improvements and Access to Justice Act,* 123 F.R.D. 399, 408–09 (1989) (same).

The alleged constitutional issue that might arise when one alien sues another is not presented in this case because there is a citizen party, thereby satisfying minimal diversity. Moreover, the resolution of the constitutional issue is not as clear as may appear from first glance. Even accepting the general view that the Supreme Court's decision in *Hodgson v. Bowerbank,* 9 U.S. (5 Cranch) 303, 3 L.Ed. 108 (1809) (diversity jurisdiction does not extend to actions between aliens) is a construction of the diversity clause of Article III, this would not necessarily preclude Congress from authorizing federal jurisdiction in suits between aliens grounded on other Constitutional bases. *See, e.g., Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983) (relying on "Arising Under" clause of Article III); *Tidewater,* 337 U.S. at 583, 69 S.Ct. at 1174 (opinion of Jackson, J.) (relying on Article I power to legislate re District of Columbia). We leave this intriguing issue for another day because we are bound to follow the injunction applicable to all federal courts not to reach to decide a constitutional issue unless it is squarely presented. It is sufficient for us to hold today that we see nothing in the Constitution which would turn us from applying the plain statutory language in the case before us.

## III.

### *Conclusion*

Because in this case there is a deemed citizen of Virginia suing an alien and a citizen of Delaware and New Jersey, the district court properly found that there is the requisite diversity of citizenship. Accordingly, we will affirm the judgment of the district court.