**CHINA NUCLEAR ENERGY INDUSTRY CORPORATION, Plaintiff,**

v.

**Arthur ANDERSEN, LLP, formerly known as Arthur Andersen & Co., Defendant.**

**No. CIV. A. 98–WY–496–CB.**

United States District Court, D. Colorado.

July 20, 1998.

---

Eugene M. Sprague, M. Frances Cetrulo, Daniel S. Duggan, Denver, CO, for Plaintiff.

H. Thomas Coghill, Kevin D. Evans, Denver, CO, for Defendant.

---

## ORDER ON MOTION FOR DETERMINATION OF JURISDICTION

BRIMMER, District Judge.

### Background

Plaintiff China Nuclear brings this action against Defendant Arthur Andersen alleging that Anderson issued a false and misleading report upon which China Nuclear relied and ultimately suffered damages. China Nuclear and NUEXCO (a non-party) entered into a contract whereby China Nuclear agreed to provide uranium to NUEXCO. After NUEXCO made several late payments, China Nuclear informed NUEXCO it would withhold further delivery until it could obtain reasonable assurances of prompt payment. NUEXCO explained the late payments as the result of temporary cash flow difficulties, and suggested that China Nuclear obtain a letter from Arthur Andersen regarding NUEXCO's net worth. Arthur Andersen thus issued a report stating it had audited NUEXCO's financial statements and opining that NUEXCO's net worth as of December 31, 1992 was in excess of $100 million. Andersen explicitly expressed no opinion regarding the state of NUEXCO's condition after that date.

The Motion currently before the Court is China Nuclear's Motion for Determination of Jurisdiction and Stay of Proceedings Pending Determination. In this motion, Plaintiff "suggests" the Court may lack subject matter jurisdiction and asks that this determination be made (as it must be in any event) before the Court consider substantive matters such as Andersen's Motion to Dismiss. In its response, Andersen submits jurisdiction is lacking.

### Discussion

The diversity of citizenship provisions of 28 U.S.C. § 1332 provide as follows:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

(1) citizens of different States;

(2) citizens of a State and citizens or subjects of a foreign state;

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

For the purposes of this section ... an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled.

The Supreme Court has long read this statute to impose a requirement of complete diversity of citizenship under which "each defendant must be a citizen of a different state than each plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Complete diversity is required of aliens as well, even if they are citizens of different countries. *See Kramer v. Caribbean Mills*, 394 U.S. 823, 824 n. 2, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969); *Depex Reina 9 Partnership v. Texas Int'l Petroleum Corp.*, 897 F.2d 461, 465 (10th Cir.1990). Consequently, the presence of at least one alien on both sides of an action precludes diversity jurisdiction. *See, e.g., Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1557 (11th Cir.1989); *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 790 (2d Cir.1980).

The diversity requirement also applies to corporations and partnerships. Unlike corporations, however, partnerships are not for diversity purposes artificial citizens of any jurisdiction by virtue of their place of inception or principal place of business. Rather, a partnership's citizenship—to the extent it has one—is determined on the basis of the state and/or country of citizenship of its individual partners. *See C.T. Carden v. Arkoma Assoc.*, 494 U.S. 185, 195, 110 S.Ct.

1015, 108 L.Ed.2d 157 (1990); *Depex Reina 9 Partnership*, 897 F.2d at 465. In other words, for diversity purposes a partnership is a citizen of each jurisdiction of which a partner is a citizen. *See Cunard Line Ltd. v. Abney*, 540 F.Supp. 657, 660 (S.D.N.Y.1982)(noting that under pre–1988 statute diversity jurisdiction would not exist in a suit by an alien against a partnership with an alien partner). Therefore, some geographically dispersed partnerships, such as Arthur Andersen, may have partners that are citizens of many or even all States as well as partners that are citizens of foreign countries. It follows logically from this fact that only rarely will diversity suits involving such far-flung entities be able to satisfy the complete diversity requirement.

■ Here, China Nuclear invokes in its Complaint the so-called alienage provision. That is, China Nuclear contends jurisdiction is appropriate because it is an alien (a citizen or subject of a foreign state) and the partners of Arthur Andersen are all citizens of the United States. Were this the case, jurisdiction would undoubtedly exist under § 1332(a)(2).

It is not, unfortunately, the case. Andersen has over a dozen equity partners that are foreign citizens but permanent resident aliens living in the United States. These circumstances implicate the last sentence of § 1332(a), which was added by Congress in 1988. That amendment "deems" permanent resident aliens to be citizens of the state in which they are domiciled. Thus, if given effect this amendment would "deem" all the permanent resident alien partners of Arthur Andersen to be citizens of the states in which they live, thereby preserving complete diversity jurisdiction. Problems arise, however, if the amendment is applied in accordance with its plain language.

First, if applied as written the amendment authorizes jurisdiction in cases where neither party is a citizen of the United States. For example, under the amendment a permanent resident alien (a citizen of France) living in Virginia may sue a permanent resident alien (a citizen of Germany) living in New Hampshire in federal court under the diversity statute even though neither party is a citizen of the United States—a clear imposition on Article III's limitation of federal court jurisdiction to "controversies ... between *citizens* of different States ... and foreign States, Citizens, or Subjects." Thus, in at least some circumstances, a plain language application renders an unconstitutional result. *See, e.g., Mossman v. Higginson*, 4 Dall. 12, 4 U.S. 12, 1 L.Ed. 720, 720 (1800) ("The constitution nowhere gives jurisdiction (nor has any judge ever countenanced the idea) in suits between alien and alien.").

Second, Congress passed the amendment as part of a comprehensive effort to reduce the federal court's mounting diversity jurisdiction caseload. As explained in the amendment's legislative history: "There is no reason why actions involving persons who are permanent residents of the United States should be heard by federal courts merely because one of them remains a citizen or subject of a foreign state or has not yet become a citizen of the United States." *Report of the Proceedings of the Judicial Conference of the United States* 77 (Sept. 14, 1988). The Senate "focused [particularly] on the incongruity of permitting a permanent resident alien living next door to a citizen to invoke federal jurisdiction for a dispute between them while denying a citizen across the street the same privilege." *Saadeh v. Farouki*, 107 F.3d 52, 60 (D.C.Cir.1997). Hence, a plain language application of the statute also produces an outcome neither intended nor contemplated by Congress. *See A.T.X. Export v. Mendler*, 849 F.Supp. 283, 284 (S.D.N.Y.1994).

Only two appellate courts—and no courts in this Circuit—have addressed the scope of the 1988 amendment. In *Singh v. Daimler–Benz AG*, 9 F.3d 303 (1993), the Third Circuit Court of Appeals ignored the legislative history and held the statute must be read to mean what it plainly says, that in all instances a permanent resident alien is deemed to be domiciled in the state in which the alien lives. There, a permanent resident alien deemed to be a citizen of Virginia sued a nonresident alien and a citizen of a state other than Virginia. Previously, such an action would have destroyed jurisdiction because two aliens would have been on opposing sides and complete diversity would not have existed. The Third Circuit noted the potential constitutional infirmity that could arise from application of its holding, but not-

ed that in *Singh* there was no such problem because an alien and a citizen were on opposing sides, so at least minimal diversity existed.

The D.C. Circuit reached the contrary result in *Saadeh v. Farouki,* 107 F.3d 52 (1997). There, Saadeh, a nonresident alien of Greece, sued Farouki, a citizen of Jordan but a permanent resident alien living in Maryland, and L.R. Holdings, a D.C. corporation. Under the plain language of the § 1332 amendment, Farouki could be "deemed" to be a citizen of Maryland for diversity purposes, and diversity could be considered to exist even though aliens were present on both sides. (Saadeh (an alien) was suing Farouki (an alien) and L.R. Holdings (a corporation and United States citizen)). Despite the similarity to *Singh,* the D.C. Circuit refused to give effect to the obviously unintended and (in other circumstances) unconstitutional result ordained by the amendment. That Court explained its reasoning as follows:

> In resolving a question of statutory interpretation, a court's starting point is always the language of the statute. If the language is plain on its face, courts do not ordinarily resort to legislative history. Nevertheless, there are exceptions. For example, the Supreme Court has observed that "in rare cases, the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters, and those intentions must be controlling." *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982). "Looking beyond the naked text for guidance is perfectly proper when the result it apparently decrees is difficult to fathom or where it seems inconsistent with Congress' intention, since the plain-meaning rule is 'rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists.'" *Public Citizen v. U.S. Dep't of Justice,* 491 U.S. 440, 455, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989).

> . . . . .

> A literal reading of the 1988 amendment to § 1332(a) would produce an odd and potentially unconstitutional result. It would both partially abrogate the long-standing rule of complete diversity, and

create federal diversity jurisdiction over a lawsuit brought by one alien against another alien, without a citizen of a state on either side of the litigation. The judicial power of the United States does not extend to such an action under the Diversity Clause of Article III.

. . . . .

Given the reasoning underlying the recommendation for the alienage provision and the general expressions of legislative intent for the Judicial Improvements Act, in the absence of contrary evidence, we conclude that Congress intended to contract diversity jurisdiction through the 1988 amendment to § 1332(a), not to expand it by abrogating the longstanding rule that complete diversity is destroyed in lawsuits between aliens. . . . It would be illogical to conclude that Congress intended to eliminate diversity jurisdiction in cases between a citizen and an alien permanently residing in the same state, but simultaneously intended to expand diversity jurisdiction in cases between an alien permanently residing in one state and an alien permanently residing in another state. Despite the plain language of § 1332(a), the alienage amendment "clearly appears to have been intended only to eliminate subject matter jurisdiction of cases between a citizen and an alien living in the same state." *Lloyds Bank,* 817 F.Supp. at 419. There is no reason to conclude, however, that the amendment was intended to create diversity jurisdiction where it did not previously exist. Like *Public Citizen,* this appears to be one of those rare cases where the most literal interpretation of a statute is at odds with the evidence of Congressional intent and a contrary construction is necessary to avoid "formidable constitutional difficulties." 491 U.S. at 463, 466, 109 S.Ct. 2558.

After considerable study, the Court finds the approach of the D.C. Circuit in *Saadeh* to be more persuasive. There is no reason to adhere formalistically to a statute's plain language when to do so would be obviously contrary to the drafters' intended aims and, in some cases, constitutionally impermissible. Therefore, the Court finds that § 1332 does not confer diversity jurisdiction upon the Court in suits involving "an alien on one side,

and an alien and a citizen on the other side, regardless of the residence status of the aliens." *Saadeh,* 107 F.3d at 61. Because China Nuclear is an alien and Andersen has partners who are aliens, the requirement of complete diversity does not exist in this case. The Court therefore **ORDERS** that China Nuclear's complaint is **DISMISSED** for lack of jurisdiction. *See Buti v. Impressa Perosa, S.R.L.,* 935 F.Supp. 458, 462 (S.D.N.Y.1996); *Department of Economic Development v. Arthur Andersen & Co.,* 924 F.Supp. 449, 458 (S.D.N.Y.1996); *Lloyds Bank v. Norkin,* 817 F.Supp. 414, 418 (S.D.N.Y.1993) (noting that to find jurisdiction in these circumstances would require a court to "conclude that Congress abandoned the rule of complete diversity, enunciated nearly two hundred years ago ... and regularly applied since to, *inter alia,* actions with aliens on both sides, but did so without comment"); *Arai v. Tachibana,* 778 F.Supp. 1535, 1536 (D.Haw.1991).