In re BRIDGESTONE/FIRESTONE, INC., TIRES PRODUCTS LIABILITY LITIGATION,

This Order Applies To:

Rodolfo Ortiz Cisneros, Plaintiff,

v.

Bridgestone/Firestone, Inc., et al., Defendants.

Nos. IP 00–9373–C B/S, IP 01–5454–C–B/S. MDL No. 1373.

United States District Court, S.D. Indiana, Indianapolis Division.

Jan. 10, 2003.

Don Barrett, Barrett Law Office PA, Lexington, MS, Victor Manuel Diaz Jr., Podhurst Orseck Josefsberg & Eaton, Miami, FL, Mike Eidson, Colson Hicks Eidson, Coral Gables, FL, Irwin B. Levin, Cohen & Malad, William E Winingham, Wilson Kehoe & Winingham, Indianapolis, IN, for Plaintiff.

John H. Beisner, O'Melveny & Myers LLP, Washington, DC, Daniel P. Byron, Bingham McHale LLP, Mark Merkle, Krieg Devault LLP, Randall Riggs, Locke Reynolds LLP, Thomas G Stayton, Baker & Daniels, Indianapolis, IN, Mark Herrmann, Jones Day Reavis & Pogue, Thomas S. Kilbane, Squire Sanders & Dempsey LLP, Cleveland, OH, Colin P. Smith, Holland & Knight LLC, Chicago, IL, for Defendants.

## ORDER DENYING MOTION TO REMAND AND GRANTING LEAVE TO AMEND

BARKER, District Judge.

This matter is before the Court on the plaintiff's Motion to Remand and for Sanctions and his Motion for Leave to Join Bridgestone/Firestone Canada, Inc. ("motion to amend"). For the reasons set out below, the Motion to Remand and for Sanctions is DENIED. The motion to amend is GRANTED, and the Amended Complaint attached to the motion to amend (at docket number 5927) is deemed filed as of the date of the motion.

### Discussion

#### Motion to Remand

Plaintiff Rodolfo Ortiz Cisneros, alleged in the complaint to be a citizen of Mexico, sued defendants Bridgestone/Firestone, Inc. ("Firestone") (a U.S. corporation with citizenship in Tennessee and Ohio), Bridgestone Corporation ("Bridgestone") (a Japanese corporation), and Firestone Canada, Ltd. ("Firestone Canada") (a Canadian entity) in Texas state court. Firestone removed the action to federal court, asserting federal jurisdiction under 28 U.S.C. § 1332 as a case between a citizen (Firestone) and a citizen of a foreign state (the plaintiff). Firestone, recognizing that section 1332 would not supply jurisdiction for a suit by a foreign citizen against foreign defendants, argued that the presence of Bridgestone and Firestone Canada as defendants should be ignored because they were fraudulently joined. Firestone later established in Mr. Cisneros's deposition in May 2002 that although he is apparently a citizen of Mexico, he is also a permanent resident alien of the United States residing in Texas. On July 9, 2002, Firestone filed an Amended Notice of Removal, asserting that federal jurisdiction also exists (without regard to its fraudulent joinder argument) because under 28 U.S.C. § 1332(a),

a permanent resident alien is "deemed a citizen of the State in which such alien is domiciled."[1] Therefore, section 1332(a)(3) would also supply subject matter jurisdiction because this is a case between "citizens of different States" (the plaintiff, who is deemed to be a citizen of Texas, and Firestone, which is a citizen of Tennessee and Ohio) and "in which citizens or subjects of a foreign state (Bridgestone and Firestone Canada) are additional parties."

We address Firestone's later asserted basis for subject matter jurisdiction first. In 1988, Congress amended section 1332 with the following language:

> For the purposes of this section, section 1335, and section 1441, an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled.

("1988 Amendment")

At first blush, application of the 1988 Amendment to the jurisdictional facts at hand would seem to yield a simple conclusion (and one that Firestone accepts without discussion): Because Mr. Cisneros is deemed a citizen of the State of Texas for purposes of section 1332, the federal court has jurisdiction over this case under subsection (a)(3), as it is between "citizens of different States and in which citizens or subjects of a foreign state are additional parties."

The problem is that a number of federal district courts and at least one court of appeals have declined to reach the conclusion that the plain language of the 1988 Amendment would seem to compel. *See, e.g., Saadeh v. Farouki,* 107 F.3d 52 (D.C.Cir.1997); *Matsuda v. Wada,* 128

F.Supp.2d 659 (D.Hawai'i 2000); *China Nuclear Energy Industry Corp. v. Andersen,* 11 F.Supp.2d 1256 (D.Colo.1998); *Engstrom v. Hornseth,* 959 F.Supp. 545 (D.Puerto Rico 1997); *Ozawa v. Miyata,* 1997 WL 779047 (N.D.Ill.Dec. 15, 1997). They have done so for three primary reasons. First, applying this language literally could create diversity jurisdiction over a suit brought by one alien against another alien, without an actual U.S. citizen (absent the "deeming" provision) on either side of the litigation. Such an application, those courts have determined, would likely place the 1988 Amendment on a collision course with the diversity clause in Article III of the United States Constitution, which limits its federal court diversity jurisdiction to "Controversies ... between citizens of different States ... and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects." Second, courts have examined portions of the legislative history of amendments made to section 1332 in 1988 and concluded that Congress's intent was to *limit* diversity jurisdiction, not to expand it. The principal purpose of the 1988 Amendment, these courts have determined, was to prevent federal courts from having to hear a dispute between a foreign citizen who is a permanent resident alien of the United States and a U.S. citizen of the same state. In other words, Congress did not want Mr. Cisneros to be able to sue his Brownsville, Texas neighbor in federal district court. Third, some courts have noted that literal application of the 1988 Amendment would abrogate the rule requiring complete diversity in this context,[2] in the absence of any express legislative intent.

---

**1.** The plaintiff's deposition revealed that he also has a residence in Mexico. He has not argued, however, that he is not "domiciled" in Texas. The plaintiff has, in fact, made no substantive response in opposition to Firestone's contention that he is deemed to be a citizen of Texas for purposes of section 1332.

**2.** By using the term "diversity" in this context, they mean that foreign citizens could be among both the plaintiffs and the defendants. *But see* discussion *infra.*

This court was able to locate only two federal appellate decisions that address the application of the 1988 Amendment under facts similar to those presented here.[3] The Seventh Circuit has not decided the issue.[4] In *Saadeh*, 107 F.3d 52, the D.C. Circuit Court of Appeals held, for the reasons outlined above, that the 1988 Amendment does not confer diversity jurisdiction over an alien on one side, and an alien and a citizen on the other side, regardless of the residence status of the aliens. 107 F.3d at 61. *Saadeh*, and a few district courts that have followed it, held that even though the language of the 1988 Amendment is not so limited, it should nevertheless be interpreted only to prevent jurisdiction over controversies between resident aliens domiciled in a particular state and citizens of that same state and should never be read to supply jurisdiction. *Id.* (*See also* the district court decisions cited in the preceding paragraph.).

The Third Circuit Court of Appeals reached the opposite conclusion in *Singh v. Daimler-Benz AG*, 9 F.3d 303 (3d Cir. 1993). In *Singh*, the plaintiff was a citizen of India admitted to the United States as a permanent resident with domicile in Virginia. He sued a German automaker and its American distributor, which had citizenship in Delaware and New Jersey. In urging remand after the defendants' removal, the plaintiff maintained that the court should decline to apply the 1988 Amendment literally in light of its legislative history, the potential for unconstitutional results, and the longstanding requirement of complete diversity that would be compromised if foreign citizens could be on both sides of the litigation.

The Third Circuit rejected these arguments. It began with the finding that the statutory language is clear and therefore the court's "inquiry should be complete." *Id.* at 306. Nevertheless, the court examined the legislative history of all of the 1988 amendments to section 1332 and found the legislative history argument wanting. Congress's intent to limit diversity jurisdiction was expressed, the court noted, only in connection with the increase in the amount in controversy that was enacted at the same time. *Id.* at 307. In any event, the court concluded:

> We recognize that Congress may not have intended to enlarge diversity jurisdiction even in the limited situation presented by this case, but the possible unintended effect of permitting a permanent resident alien to invoke diversity jurisdiction when that party could not have done so before the amendment is not sufficient reason for us to torture or limit the statutory language.

*Id.* at 309 (citing *Pittston Coal Group v. Sebben*, 488 U.S. 105, 115, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988)).

The Third Circuit also found that no constitutional problem was presented by the facts before it: so long as the action involved a United States citizen (in addition to any parties "deemed" to be citizens under the 1988 Amendment), then the requirements of Article III are met. The potential unconstitutional application of the 1988 Amendment is limited to cases "in which a permanent resident alien sues as the sole defendant either a permanent resident alien domiciled in another state or a nonresident alien." *Id.* at 311. Finally, the court found that the plain language of the

---

**3.** The parties have not briefed this question at all. Firestone made the conclusory assertion in its response to the plaintiff's motion to remand that the language at issue supports the exercise of federal jurisdiction; the plaintiff has made no response.

**4.** The Seventh Circuit has cited *Sadeeh* generally in dicta, noting the principal effect of the 1988 Amendment. *See Karazanos v. Madison Two Associates*, 147 F.3d 624 (7th Cir.1998).

1988 Amendment trumped any concern that its application allowed for minimal rather than complete diversity in this limited context. *Id.*

We find that the Third Circuit's opinion in *Singh* presents the better-reasoned analysis and should be followed in this case. In addition to all the reasons articulated in that decision, we discern three other reasons for reaching the conclusion that the 1988 Amendment supplies jurisdiction here. First, a number of district court decisions that rely on *Saadeh* involved only foreign citizens or aliens on both sides of the litigation. *See, e.g., Matsuda,* 128 F.Supp.2d 659; *Ozawa,* 1997 WL 779047. That was not the case in *Singh* and it is not the case here. Therefore, to the extent other courts have been willing to sidestep the unambiguous language of the 1988 Amendment in deference to the objective of avoiding an unconstitutional result, that motivation is not strong here. Second, the *Saadeh* court, in our view, placed too much emphasis on the slight loosening of the complete diversity requirement occasioned by application of the plain meaning of the 1988 Amendment as a basis for avoiding the language of the statute. Congress was empowered to make this small adjustment in that requirement, and whether it intended to do so or not, the plain language of the statute does so, and we will not ignore it. Third, numerous courts have found that the complete diversity requirement with respect to foreign parties had already been altered by section 1332(a)(3) itself. *See, e.g., Bank of New York v. Bank of America,* 861 F.Supp. 225, 228 (S.D.N.Y.1994) (citing cases). The Seventh Circuit is in accord with this view. Its decision in *Allendale Mutual Ins. v. Bull Data Systems,* 10 F.3d

425 (7th Cir.1993), establishes that section 1332(a)(3), even without the 1988 Amendment, eases the complete diversity requirement in this context. *Allendale* involved a suit filed by a British entity and a U.S. entity against a French entity and a U.S. entity. The domestic entities were citizens of different states, and the 1988 Amendment was not implicated because the parties were not individuals. The Seventh Circuit found that section 1332(a)(3) provides federal subject matter jurisdiction even where foreign citizens are present on both sides of the litigation:

> We must consider whether [foreigners on both sides of the litigation] destroys the complete diversity of citizenship that is a prerequisite to maintaining a suit under the diversity jurisdiction.... The presence of citizens of different states on both sides of a lawsuit obviously does not destroy diversity; it is the precondition of diversity. So why should the presence of citizens of foreign states destroy diversity unless ... they are citizens of the same foreign state?

*Id.* at 427–28.

The Seventh Circuit went on to observe that the lack of complete "diversity" (the presence of foreign parties on both sides of the litigation) does not destroy federal subject matter jurisdiction under section 1332. Rather, when one side of the litigation has only foreign parties and the other side a mixture of foreign and domestic parties, jurisdiction fails, not for lack of complete "diversity," but because there is no jurisdictional "pigeonhole" in section 1332(a) in which the case will fit. The court went on to find that "[a] case such as this, in which citizens of states are on both sides of the litigation, ... and are completely diverse, fits section 1332(a)(3) to a t," despite the presence of foreign parties on both sides. *Id.* at 428.[5]

---

**5.** We note that *Allendale* is based on the presence of a U.S. citizen on each side of the case. It does not address the application of the 1988 Amendment, which deems Mr. Cisneros

to be a citizen of Texas and therefore supplies the jurisdictional "pigeonhole." In any event, we cite *Allendale* only for the purpose

We do not intend to paint over the problem that a logical extension of the plain language of the 1988 Amendment could, in a hypothetical case not before us, produce a result subject to constitutional challenge. It seems to us, however, that the cardinal rule of statutory construction—that a court should not look beyond the language of an unambiguous statute—should not yield to considerations not even presented by the facts of this case.[6] The conclusion that the 1988 Amendment supplies federal subject matter jurisdiction over this case is constitutionally benign and, with respect to the complete diversity requirement, jurisprudentially benign as well. It furthermore is not demonstrably inconsistent with legislative intent. We will therefore apply its plain meaning to this case. The motion to remand and for sanctions is therefore DENIED.[7]

*Leave to Amend*

The plaintiff has requested leave to file an amended complaint naming Bridgestone/Firestone Canada, Inc. ("BFCI") as a defendant. In support of leave, the plaintiff maintains that BFCI has been identified by Firestone as the successor of Firestone Canada, whom the plaintiff originally sued as the manufacturer of the tire at issue. We determine that the plaintiff has not unduly delayed seeking amendment and that the defendants will not be prejudiced by the joinder being allowed at this time. Leave to amend is therefore GRANTED, and the Amended Complaint

attached to the motion to amend is deemed filed as of the date of the motion to amend.

---

of demonstrating that the Seventh Circuit has held that section 1332(a)(3) has already modified the complete diversity requirement. Adherence to what some courts have identified as the principle of complete diversity in this context (meaning the prohibition of foreign parties on both sides of the litigation) therefore carries no persuasive weight in our analysis.

**6.** The opposing view—that the court should find the potential for unconstitutional application of the 1988 Amendment dispositive even though not presented by the facts of the case before it—was ably articulated in *Engstrom*, 959 F.Supp. at 552–53.

**7.** Because of this resolution, we need not and do not address Firestone's fraudulent joinder arguments.