**Bo ENGSTROM, et al., Plaintiffs,**

v.

**Kai HORNSETH, et al., Defendants.**

**Civil No. 93–2047 (DRD).**

United States District Court,
D. Puerto Rico.

March 12, 1997.

Ernesto Reyes–Blassino, Hato Rey, PR, for plaintiffs.

James A. Toro, San Juan, PR, for Agrippina Versicheru.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

### I. Introduction

The facts relevant to the Court's jurisdiction are few and undisputed. Bo Engstrom and his wife, Mayda Engstrom, filed the present diversity action in tort, alleging that the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). Mr. Engstrom is a Swedish citizen admitted to permanent residence in the United States, Mrs. Engstrom is a U.S. citizen, and they are both domiciled in the Commonwealth of Puerto Rico. The defendants are all citizens of and domiciled in European countries.[1]

Pending before the Court is defendants' motion to dismiss for lack of subject matter jurisdiction (Docket No. 27), in which they argue that the Court lacks jurisdiction over this action because there are alien parties on both sides of the suit. The plaintiffs oppose this motion, relying on the Judicial Improvements and Access to Justice Act of 1988,[2] which among other things amended 28 U.S.C. § 1332(a) by adding a proviso stating that "[f]or the purposes of this section ... an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled." Plaintiffs argue that this amendment grants the Court jurisdiction over the instant case.

The motion to dismiss therefore presents a pure issue of statutory interpretation: whether the new "deeming" provision has the effect of extending the jurisdiction of the district courts of the United States to cover civil actions between an alien, on one side, and a permanent resident alien and a U.S. citizen, on the other.

### II. Discussion

As a preliminary matter, the Court notes that the language of the deeming provision in Section 1332(a) lends itself to three possible interpretations, each of which has found at least one judicial sponsor. First, the provision may have merely withdrawn alienage jurisdiction from actions between a U.S. citizen and a permanent resident alien when they are both domiciled in the same State.[3] Second, the deeming provision could be understood to have extended "citizenship," as that term is used and understood for purposes of both § 1332 and Article III, § 2 of the U.S. Constitution,[4] to permanent resident aliens.[5] Third, the provision could have elim-

---

1. Co-defendant Kai Hornseth is a citizen of Sweden. Co-defendant Dag Solvberg is a citizen of Norway. Co-defendant J.A.C. International Yacht Brokers is incorporated and has its principal place of business in France. Co-defendant Agrippina Versicherung Antiengesellschaft ("Agrippina") is incorporated and has its principal place of business in Germany.

2. Act of November 19, 1988, Pub.L. No. 100–702, 102 Stat. 4642 (effective May 18, 1989) (codified at 28 U.S.C. § 1332(a)). For general commentary on the innovations introduced by the 1988 Act, see John B. Oakley, *Recent Statutory Changes in the Law of Federal Jurisdiction and Venue*, 24 U.C.Davis L.Rev. 735 (1991); Richard Bisio, *Changes in Diversity Jurisdiction and Removal*, 69 Mich.B.J. 1026 (1990); and David D. Siegel, *Changes in Federal Jurisdiction and Practice Under the New Judicial Improvements and Access to Justice Act*, 123 F.R.D. 399 (1989).

3. This interpretation has been adopted by two federal district courts. *Lloyds Bank PLC v. Norkin*, 817 F.Supp. 414, 419 (S.D.N.Y.1993); *Arai v. Tachibana*, 778 F.Supp. 1535, 1543 (D.Haw. 1991).

4. "The judicial Power shall extend ... Controversies ... between Citizens of different States; ... and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects." U.S. Const. art. III, § 2.

5. This interpretation of the amended Section 1332(a) was adopted by the federal district court in *Singh v. Daimler–Benz, A.G.*, 800 F.Supp. 260 (E.D.Pa.1992).

inated the judicially-established requirement of complete diversity in alienage cases.[6]

The plaintiffs urge that the Court adopt either the second or the third interpretations. The defendants, however, argue that the first interpretation is the only correct one. The choice before the Court is potentially fatal to the plaintiffs' suit, for they have alleged no jurisdictional basis for this suit other than § 1332. In order to choose among these alternative interpretations, the Court first reviews the law regarding alienage jurisdiction as it existed prior to the addition of the deeming provision. This review will permit the Court to gauge the magnitude of the change from prior law represented by each interpretation of the deeming provision.

## A. Alienage Jurisdiction Prior to the 1988 Amendment to Section 1332(a)

The district courts of the United States have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000[7] ..., and is between ... citizens of a State and citizens or subjects of a foreign State." 28 U.S.C. § 1332(a)(2). It is therefore clear that, before the date of effectiveness of the deeming provision, the federal district courts had original jurisdiction over actions between a citizen of a State plaintiff and a permanent resident alien defendant, even when such defendant was domiciled in the same State as the plaintiff. *See, e.g., Breedlove v. Nicolet,* 32 U.S. (7 Pet.) 413, 431–32, 8 L.Ed. 731 (1833) (alienage jurisdiction existed over suit between citizens of the Republic of Switzerland who resided in New Orleans and citizens of the State of Louisiana); *C.H. Nichols Lumber Co. v. Franson,* 203 U.S. 278, 27 S.Ct. 102, 51 L.Ed. 181 (1906) (alienage juris-

diction existed over suit between subject of the Kingdom of Sweden who resided in Washington State and citizens of that state); *Jagiella v. Jagiella,* 647 F.2d 561, 563 (5th Cir.1981) (alienage jurisdiction existed over suit between citizen of France domiciled in the State of Georgia and citizen of that state). *See also* 1 James Wm. Moore, et al., *Moore's Federal Practice* ¶ 0.75[1.–2–2], at 800.39 (2d ed. 1995). *Cf. Sadat v. Mertes,* 615 F.2d 1176, 1183 (7th Cir.1980) (listing cases). As the Supreme Court explained, "[i]f [the plaintiffs were] originally aliens, they did not cease to be so, nor lose their right to sue in the federal court, by a residence in Louisiana. Neither the constitution nor acts of congress require that aliens should reside abroad, to entitle them to sue in the courts of the United States." *Breedlove,* 32 U.S. at 431–32.

However, it is also clear that, prior to the date of effectiveness of the "deeming" provision, this case could not have been brought in a federal district court. First, the Article III Judicial Power does not extend to cases brought under the courts' diversity jurisdiction in which the only parties are aliens. *See Mossman v. Higginson,* 4 U.S. (4 Dall.) 12, 14, 1 L.Ed. 720 (1800) ("[T]he legislative power of conferring jurisdiction on the federal Courts is, in this respect, confined to suits between citizens and foreigners."); *Montalet v. Murray,* 8 U.S. (4. Cranch) 46, 2 L.Ed. 545 (1807; *Hodgson v. Bowerbank,* 9 U.S. (5 Cranch) 303, 303, 3 L.Ed. 108 (1809);[8] *Jackson v. Twentyman,* 27 U.S. (2 Pet.) 136, 136, 7 L.Ed. 374 (1829) ("[T]he judicial power was not extended to private suits, in which an alien is a party, unless a citizen be the adverse party."); *Compagnie Nationale Air*

---

**6.** The U.S. Court of Appeals for the Third Circuit affirmed the decision of the U.S. District Court for the Eastern District of Pennsylvania, but on slightly different grounds, adopting instead this third, more cautious interpretation of the deeming provision. *Singh v. Daimler–Benz, A.G.,* 9 F.3d 303 (3d Cir.1993).

**7.** The diversity statute, 28 U.S.C. § 1332(a), was recently amended to increase the amount in controversy requirement to $75,000. However, the increased amount is inapplicable because this suit was filed about three years prior to the date of effectiveness of the amendment. In any case,

the defendants are not questioning whether the complaint meets the amount in controversy requirement.

**8.** *Hodgson* involved a suit between alien plaintiffs and defendants who were alleged to be " 'late of the district of Maryland, merchants,' but were not stated to be citizens of the State of Maryland." *Hodgson,* 9 U.S. at 303. The defendants objected to the trial court's jurisdiction, arguing that the record was inadequate to establish that the defendants were citizens and not aliens. The Supreme Court agreed and dismissed the case.

*France v. Castano,* 358 F.2d 203 (1st Cir. 1966) (no jurisdiction over suit by Cuban citizens against French corporation); *Lloyds Bank PLC v. Norkin,* 817 F.Supp. 414, 416 (S.D.N.Y.1993) ("It is clear that Article III of the Constitution does not give Congress the power to grant the federal courts jurisdiction over an action between two aliens."). *See also* 13B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 3604, at 384–386 (1984) ("the Supreme Court determined that the [Judiciary Act of 1789] was unconstitutional insofar as it might permit suits in a federal court between two aliens") [hereinafter Wright and Miller, *Federal Practice and Procedure* ]; 1 *Moore's Federal Practice* ¶ 0.75[1.–2–2], at 800.38 ("The organic grant of alienage jurisdiction requires that there be a state or a citizen of one of the United States on one side of the litigation. Thus, Congress is *powerless* to provide for federal court jurisdiction under the *alienage* grant [9] over cases in which the only litigants are aliens, even if they are citizens of different countries") (emphasis added).

Second, for the exercise of alienage jurisdiction to be proper, there must be complete diversity between the parties. Interpreting the Judiciary Act of 1789, Chief Justice Marshall wrote:

> The words of [the Judiciary Act of 1789] are, "where an alien is a party; or the suit is between a citizen of a state where the suit is brought, and a citizen of another state." The court understands these expressions to mean, that each distinct interest should be represented by persons, all of whom are entitled to sue, or may be sued, in the federal courts. That is, that where the interest is joint, each of the persons concerned in that interest must be competent to sue, or liable to be sued, in those courts.

*Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). In other words, "diversity jurisdiction does not exist unless each defendant is a citizen of a different State from each plaintiff." *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978). It should be noted that "[t]he complete diversity rule does not prevent co-plaintiffs (or co-defendants) from being from the same state; rather, it requires that all of the plaintiffs be from different states than all of the defendants." Erwin Chemerinsky, *Federal Jurisdiction* § 5.3.3, at 280 (2d ed. 1994). In the alienage jurisdiction context, complete diversity requires that there not be aliens on both sides of a lawsuit, even if the aliens are citizens of different countries. *Kramer v. Caribbean Mills,* 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969). *See generally* 1 *Moore's Federal Practice* ¶ 0.75[1.–2–3], at 800.39–800.43; 13B & 14 Wright and Miller & Cooper, *Federal Practice and Procedure* §§ 3605, 3661 (1984).

Third, because the requirement of complete diversity is of judicial rather than constitutional pedigree, being "entirely a product of statutory interpretation," Congress could abrogate the requirement at any time. *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 373 n. 13, 98 S.Ct. 2396, 2402 n. 13, 57 L.Ed.2d 274 (1978).[10] In dicta, the Supreme Court has indicated that the same

---

9. It may be that, as the U.S. Court of Appeals for the Third Circuit suggests, "the resolution of the constitutional issue is not as clear as may appear from first glance.... [because] Congress [is not necessarily precluded] from authorizing federal jurisdiction in suits between aliens grounded on other Constitutional bases." *Singh v. Daimler–Benz, A.G.,* 9 F.3d 303, 312 (3d Cir.1993). But even then, such other bases would permit suits to be brought only under the courts' "arising under" jurisdiction, rather than under the courts' diversity jurisdiction. *See Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 492–98, 103 S.Ct. 1962, 1970–74, 76 L.Ed.2d 81 (1983).

10. In fact, Congress has abrogated the complete diversity requirement on at least two instances.

Thus, the 1948 Amendment to 28 U.S.C. § 1332(a)(3) appears to permit the exercise of jurisdiction over suits between citizens in which aliens are additional parties, even when there are aliens on both sides of the dispute. *See Transure, Inc. v. Marsh & McLennan, Inc.,* 766 F.2d 1297 (9th Cir.1985). Similarly, Congress has ordained that only minimal diversity be required in cases of statutory interpleader under 28 U.S.C. § 1335(a)(1). In *State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 523, 531, 87 S.Ct. 1199, 1204, 18 L.Ed.2d 270 (1967), the Supreme Court held that the interpleader statute was a valid exercise of congressional power that did not exceed the limits set by Article III.

result obtains in the alienage jurisdiction context. *See Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 829 n. 1, 109 S.Ct. 2218, 2221 n. 1, 104 L.Ed.2d 893 (1989) ("[t]his complete diversity requirement is based on the diversity statute, not Article III of the Constitution"); *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 492 n. 18, 103 S.Ct. 1962, 1970 n. 18, 76 L.Ed.2d 81 (1983) ("Since Article III requires only 'minimal diversity,' . . . diversity jurisdiction would be a sufficient basis for jurisdiction where at least one of the plaintiffs is a citizen of a State"). It therefore follows that Congress could, without exceeding the limits of the Judicial Power, abrogate the requirement of complete diversity for purposes of alienage jurisdiction. Nevertheless, before the 1988 Amendment, Congress had never done so.

## B. Alienage Jurisdiction After the 1988 Amendment to Section 1332(a): Alternative Interpretations of the "Deeming" Provision

### 1. Curtailing Jurisdiction in Alienage Suits between Neighbors

The reported cases that have interpreted the "deeming" provision have unanimously agreed that the amended section 1332(a) was *at least* intended to eliminate the jurisdiction that federal courts had over suits between citizens of a State and permanent resident aliens domiciled in that same State. *See Singh v. Daimler–Benz, A.G.*, 9 F.3d 303, 309 (3d Cir.1993); *Paparella v. Idreco Invest S.p.A.*, 858 F.Supp. 283, 284–85 (D.Mass. 1994); *Lloyds Bank PLC v. Norkin*, 817 F.Supp. 414, 416 (S.D.N.Y.1993); *Singh v. Daimler–Benz, A.G.*, 800 F.Supp. 260, 262 (E.D.Pa.1992); *Arai v. Tachibana*, 778 F.Supp. 1535, 1542 (D.Haw.1991). *See also* 13B Wright and Miller, & Cooper, *Federal Practice and Procedure* § 3604, at 95–97 (Supp.1996); David D. Siegel, *Changes in Federal Jurisdiction and Practice under the New Judicial Improvements and Access to Justice Act*, 123 F.R.D. 399, 408–09 (1989). *Cf.* 1 *Moore's Federal Practice* ¶ 0.75[1.–2–2], at 800.39.[11] As noted by the U.S. Court of Appeals for the Third Circuit,

> The Senate's consideration of the resident alien provision focused on the incongruity of permitting a permanent resident alien living next door to a citizen to invoke federal jurisdiction for a dispute between them while denying a citizen living across the street the same privilege. *See* 134 Cong.Rec. 31,055 (1988).

*Singh*, 9 F.3d at 309. This aspect of section 1332(a) is inapplicable to the case at hand, however, because the plaintiffs, a permanent resident alien and his U.S. citizen wife, are not suing citizens of the same State (or Commonwealth)[12] in which they are domiciled. Instead, the defendants are all aliens residing in foreign countries.

As noted above at Part II.A, under the law of diversity as it existed prior to 1988, this Court would not have had jurisdiction over this complaint because complete diversity is lacking, there being aliens on both sides of the dispute. The question is whether the addition of the "deeming" provision should be interpreted to have extended the jurisdiction

---

**11.** "Alienage jurisdiction is based upon the litigant's foreign nationality, and is not affected by her residence or domicile. Thus, jurisdiction is proper in actions between a citizen of a state and an alien domiciled or residing in the same state. Note, however, that the 1989 amendment to § 1332(a) may change this result for aliens admitted to the United States for permanent residence and domiciled in the same state as the other litigant." 1 *Moore's Federal Practice* ¶ 0.75[1.–2–2], at 800.39.

**12.** Pursuant to 28 U.S.C. § 1332(d), "[t]he word 'States', as used in this section, includes the Territories, the District of Columbia, and the Commonwealth of Puerto Rico." It is the diversity statute that extends federal subject matter jurisdiction to cases between a citizen of a State and a citizen of a Territory, the District of Columbia, or the Commonwealth of Puerto Rico. However, it is not clear whether the constitutional authority for doing so flows from Article III or from Congress' power to legislate for the territories under Article IV, Section 3, Clause 2, and for the District of Columbia under Article I, Section 8, Clause 17 of the Constitution. *See National Mutual Ins. Co. of D.C. v. Tidewater Transfer Co.*, 337 U.S. 582, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949) (Five Justices voted to declare constitutional the extension of diversity jurisdiction to residents of the District of Columbia; however, two of them argued that residents of D.C. were citizens of a State for Article III purposes, while three wrote that Congress had acted under Article I).

of the district courts to cases such as the one at hand. Two federal district courts have answered no, holding that the only correct interpretation of Section 1332(a) is the one which eliminates subject matter jurisdiction over suits between neighbors, as it were, when one neighbor is a citizen and the other is a permanent resident alien. One court explained that,

> [t]he actual language of 28 U.S.C. § 1332(a) as amended would require that in the instant case this Court deem Ms. Norkin a citizen of the State of New York, thus creating complete diversity by abrogating the established rule that subject matter jurisdiction does not exist where an alien is a plaintiff and an alien is a defendant. Such a result goes beyond the jurisdiction conferred by prior acts of Congress as consistently construed by the courts. There is no evidence that Congress in any way intended to abrogate this rule; rather, the amendment of 28 U.S.C. § 1332(a) clearly appears to have been intended only to eliminate subject matter jurisdiction of cases between a citizen and an alien living in the same state.

*Lloyds Bank PLC*, 817 F.Supp. at 419. *See also Arai*, 778 F.Supp. at 1543. But both the district and circuit courts in the *Singh* case held otherwise, for reasons discussed below.

### 2. A Literal Reading: Defining Permanent Resident Aliens as Citizens

On its face, the language of the deeming provision appears to mean that a permanent resident alien is to be deemed a citizen of the State in which he or she is domiciled for the purpose of determining not only diversity but also alienage jurisdiction. Pursuant to a literal interpretation, therefore, a court could exercise jurisdiction over a suit brought by a permanent resident alien against another permanent resident alien domiciled in a different State, or even against a non-resident alien.

Only one court has endorsed this 'plain language' interpretation, holding that "[t]he clear language of § 1332 establishes that when an alien receives permanent resident status the alien is no longer an alien for diversity purposes, but, is instead a citizen of

the state in which he or she resides. Therefore, Congress' enactment does not depart from the longstanding requirement of complete diversity between all parties." *Singh,* 800 F.Supp. at 262.

Other courts have been reluctant to follow the Eastern District of Pennsylvania's literal interpretation of the text of the statute, most probably because a literal interpretation of the deeming provision could lead to an unconstitutional extension of the jurisdiction of the federal courts beyond the limits of Article III. *See Singh,* 9 F.3d at 311; *Lloyds Bank PLC,* 817 F.Supp. at 416–417; *Arai,* 778 F.Supp. at 1543. *See also* 1 *Moore's Federal Practice* ¶ 0.74[2.–1], at 775 ("to the extent that it allows suits wholly between aliens, the amended statute is unconstitutional"); 13B Wright and Miller, *Federal Practice and Procedure* § 3604 (Supp.1996) (a plain language interpretation "raises a question of whether it is a constitutionally permissible exercise of jurisdiction under the language of Article III of the Constitution, which the Supreme Court has construed as a limit on Congress' power") (citing *Hodgson v. Bowerbank,* 9 U.S. (5 Cranch) 303, 303, 3 L.Ed. 108 (1809)); John B. Oakley, *Recent Statutory Changes in the Law of Federal Jurisdiction and Venue: The Judicial Improvement Acts of 1988 and 1990,* 24 U.C. Davis L.Rev. 735, 745 (1991). *See* Part II.A, above.

### 3. Taking a Step Back from the Brink: Abrogation of the Requirement of Complete Diversity

The only U.S. Court of Appeals to have considered the issues presented by the instant case declined the invitation to reach the constitutional question and instead endorsed the third interpretation indicated above. *Singh v. Daimler–Benz A.G.,* 9 F.3d 303 (3d Cir.1993), *aff'g on other grounds* 800 F.Supp. 260 (E.D.Pa.1992). *But see Lloyds Bank PLC,* 817 F.Supp. at 414; *Arai,* 778 F.Supp. at 1535. The Third Circuit determined that:

> while ... there is nothing in the legislative history of the 1988 Act that suggests that Congress intended the permanent resident alien provision to *expand* diversity jurisdiction, there is also nothing to support

[the plaintiff's] view that the entire 1988 Act was characterized by a "clarity of purpose" to *reduce* diversity jurisdiction.

*Id.* at 309 (emphases added). The Court recognized:

that Congress may not have intended to enlarge diversity jurisdiction even in the limited situation presented by this case, but the possible unintended effect of permitting a permanent resident alien to invoke diversity jurisdiction when that party could not have done so before the amendment is not sufficient reason for us to torture or limit the statutory language.

*Id.* Although the Circuit Court recognized the "potential unconstitutional application of the deeming provision as to the citizenship of permanent resident aliens," it also understood itself to be "bound to follow the injunction ... not to decide a constitutional issue unless it is squarely presented." *Id.* at 311–12.

The Third Circuit's solution to this dilemma began with the recognition that the danger of unconstitutionality was "limited to situations in which a permanent resident alien sues as the sole defendant either a permanent resident alien domiciled in another state or a nonresident alien." *Id.* at 311. The Circuit Court found that in the case before it, the alignment of the parties would satisfy minimal diversity.[13] Given that the exercise of federal jurisdiction over a case in which there is minimal diversity between the parties presents no constitutional problems, the Third Circuit concluded that it would be permissible to avoid the constitutional question by assuming that the amendment was at least intended to abrogate the complete diversity requirement for alienage jurisdiction.

## C. Selection: One of Three

The difficulty in deciding the instant case arises only because of the Court's limited ability to look past the text of statutes. The nature of the problem, however, is simple enough to understand: the language with which Congress sought to eliminate alienage jurisdiction 'between neighbors' also seems to lend itself to an entirely unintended and almost surely unconstitutional interpretation that, in addition, represents a break with an unbroken line of precedent stretching back to the beginning of the nineteenth century. The question is whether or not the Court must adopt an interpretation that does violence to the Constitution, long-standing precedent, or the intent of Congress.

The correct answer depends, as other courts that have trodden this ground before have realized, on which canon of statutory construction is applied. Thus, "[w]hen the terms of a statute [are] unambiguous, judicial inquiry is complete, except in 'rare and exceptional circumstances.'" *Lloyds Bank PLC,* 817 F.Supp. at 418 (quoting *Garcia v. United States,* 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984)). Conversely, when the text is ambiguous, a court may refer to the statute's legislative history and other indications of congressional intent. *Id.* (citing *Patterson v. Shumate,* 504 U.S. 753, 760–62, 112 S.Ct. 2242, 2248, 119 L.Ed.2d 519 91992)). Furthermore, one should not lightly infer that Congress intended to depart from established precedent, unless there be a clear indication of such intent. *Arai,* 778 F.Supp. at 1543 (citing *Sea–Land Serv. v. United States,* 874 F.2d 169, 172–73 (3d Cir.1989)). Most importantly, when the text of a statute permits it, a court should "avoid a construction of a statute which will lead to unconstitutional applications." *Singh v. Daimler Benz, A.G.,* 9 F.3d at 311.

The meaning of the text of the deeming provision is not entirely obvious; in this regard the Court disagrees with the Third Circuit's statement that "[t]here is no ambiguity in" the deeming provision. *Singh,* 9 F.3d at 306. There are two distinct sorts of ambiguity relevant to the Court's determina-

**13.** In *Singh,* the plaintiffs were all permanent resident aliens (citizens of India, admitted to the United States for permanent residence, and domiciled in the State of Virginia). The defendants were an alien corporation (incorporated in Germany) and its American distributor (a Delaware corporation with its principal place of business in the State of New Jersey). *Singh,* 9 F.3d at 304. Minimal diversity was satisfied because there was a U.S. citizen on one side and an alien on the other. Complete diversity, however, was lacking because there were aliens on both *sides* of the suit.

tion. One is the purely linguistic sort of ambiguity, to which the *Singh* court was presumably referring. Thus, there is no doubt that the deeming provision is unambiguous in the sense that the words used by the statute are comprehensible and consistent with each other.

But the deeming provision suffers from another, more subtle sort of ambiguity. Should the Court assume that by passing a law described by its principal author as "a noncontroversial judicial improvements bill with many authors," 134 Cong.Rec. 31,050 (1988), Congress intended not only to abrogate the requirement of complete diversity, which had stood undisturbed for 191 years,[14] but also to test the boundaries of Article III? As noted above, the Article III judicial power does not extend to cases in which the only parties are aliens. Thus, if the deeming provision was an exercise of Congress' authority to prescribe the jurisdiction of the federal courts, it faces an unsurmountable constitutional obstacle—Article III provides for jurisdiction between citizens and aliens, but not between aliens and aliens. Alternatively, one could argue that the deeming provision was an exercise of Congress' power under Article I, Sec. 8, Cl. 4, "to establish an uniform Rule of Naturalization." But the text itself belies such an interpretation; if Congress had intended to naturalize permanent resident aliens, it would not have used the term "deemed." One commentator has succinctly summed up the dilemma as follows:

> Although Congress can prescribe the terms upon which aliens are to be naturalized, § 1332(a) does not attempt to do that. Section 1332(a) also does not give American citizenship to aliens. It simply purports to *deem* certain aliens—those admitted for permanent residence in the United States—as citizens of a state. The manifest problem, of course, is that aliens, even those admitted for permanent residence, are still aliens, and cannot satisfy the [Ar-

ticle III] requirement of United States citizenship.

1 *Moore's Federal Practice* ¶ 0.74[2.–1], at 774.

The uncertainty as to the meaning of the deeming provision permits and may even require the Court to consider other factors, such as the statute's legislative history and the great likelihood that an expansive reading would transgress the limits of Article III. Although scant, the legislative history certainly provides no support for the second and broadest interpretation of the deeming provision. As discussed before, the only comments on record indicate that Congress was only interested in curtailing alienage jurisdiction over suits between permanent resident aliens and citizens. Furthermore, this Court is under a directive to avoid, whenever possible, constructions of statutes that could render them unconstitutional. Without deciding the issue, the Court notes that an expansive reading of the deeming provision would most likely be unconstitutional. The Court therefore concludes that it is not compelled to interpret the deeming provision to grant jurisdiction over suits wholly between aliens.

However, the solution chosen by the Third Circuit is not a satisfactory alternative. The problem is that there is no reason, other than the need to avoid an unconstitutional interpretation, why the deeming provision would be interpreted as abrogating the complete diversity requirement. Such an interpretation is equivalent to stating that "for purposes of this section, …, an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled, *except when no natural-born or naturalized citizen is also a party*." But the italicized language does not appear anywhere in the deeming provision. If the text was as clear as the Third Circuit held, why then choose an interpretation that reads into the text a limitation that does not arise out of the text itself?

---

**14.** This fact is particularly probative. There is no doubt that Congress has the authority to abrogate the complete diversity requirement in diversity or alienage cases. But by the same token, the fact that Congress has done so only rarely, and then only explicitly, is a strong indicator that the deeming provision should not be interpreted to have abrogated the requirement *sub silentio*. *See supra* note 10.

Indeed, the Third Circuit's interpretation is less consistent than the Eastern District of Pennsylvania's. The injunction to avoid unconstitutional constructions is limited by the meanings that may reasonably be read into the text. Although there are no hard and fast rules applicable to this endeavor, common sense suggests that an interpretation must be applicable across the board. In other words, if it is claimed that a statute should be interpreted to mean "X," then the statute should be applied to the same extent that X would be. The Third Circuit's interpretation, however, is a hybrid, a literal interpretation of the deeming provision that stops short of its logical conclusion out of a concern that it would be found unconstitutional. The problem is that no principled text-based argument can be made that this is what the deeming provision "means."

The Court prefers, instead, to interpret the deeming provision in a way that is consistent with the text, with precedent, and with the stated intention of Congress. The Court therefore adopts the first interpretation of the deeming provision discussed above, which merely excludes a certain category of cases from the district courts' alienage jurisdiction without altering existing law as to the requirement of complete diversity or the naturalization status of permanent resident aliens. This interpretation is a reasonable and logically consistent reading of the text that does not entail any internal contradictions. It is also consistent with, albeit not compelled by, the legislative history, which only contains discussions of the ways in which the statute would limit jurisdiction. Furthermore, there is no indication whatsoever that Congress intended to abrogate the complete diversity rule. Finally, and most importantly, an expansive, literal reading of the statute would most likely violate the Constitution.

### III. Conclusion

The uncertainty as to the meaning of the statutory text opens the door to adopting an interpretation other than a purely literal one. This Court therefore declines the invitation to read the text of the 1988 Amendment to 28 U.S.C. § 1332(a) as expansively as the Eastern District of Pennsylvania did, for such an interpretation almost certainly "exceeds the constitutional grant of alienage jurisdiction, since it allows a suit totally between aliens." 1 *Moore's Federal Practice* ¶ 0.75[1.–2–3], at 800.39. Nevertheless, the Court also declines to follow the Third Circuit's more limited alternative of interpreting the amendment as an abrogation of the complete diversity requirement. Although courts must strive to avoid interpretations of statutes that render them unconstitutional, the answer cannot be to interpret the deeming provision in a manner divorced from its textual foundations, which is what the Third Circuit's interpretation would require. Instead, the Court concludes that the only effect of the deeming provision at 28 U.S.C. § 1332(a) is to eliminate the district courts' jurisdiction over suits between a citizen and a permanent resident alien, when both are domiciled in the same state. The complete diversity requirement therefore remains in force. Because diversity is not complete in the instant case, the same is **dismissed** for lack of subject matter jurisdiction. Judgment will be entered accordingly.

IT IS SO ORDERED.