Susan LEE as guardian ad litem of Kwan–Ho Lee, and Susan Lee, individually, Plaintiff,

v.

TRANS AMERICAN TRUCKING SERVICE, INC., Hanjin Shipping Company, Ltd., Stevedoring Systems, Inc., Black Bullet Transport, Inc., Yang Ming Transport Corp. d/b/a Yang Ming Line, Sealand Service, Inc. and Maher Terminals, Inc., Defendants,

Trans American Trucking Service, Inc., Third–Party Plaintiff,

v.

P & L Marble, Inc., Third–Party Defendant,

Trans American Trucking Service, Inc., Second Third–Party Plaintiff,

v.

Stevedoring Systems, Inc., Second Third–Party Defendant,

Hanjin Shipping Company, Ltd., Third Third–Party Plaintiff,

v.

Black Bullet Transport, Inc., Third Third–Party Defendant,

HANJIN SHIPPING COMPANY, LTD., Fourth Third–Party Plaintiff,

v.

Translink Shipping, Inc., Fourth Third–Party Defendant,

P & L Marble, Inc., Fifth Third–Party Plaintiff,

v.

Yang Ming Marine Transport Corp. d/b/a Yang Ming Line, Fifth Third–Party Defendant,

P & L Marble, Inc., Sixth Third–Party Plaintiff,

v.

Sealand Service, Inc., Sixth Third–Party Defendant.

P & L Marble, Inc., Seventh

Third–Party Plaintiff,

v.

Maher Terminals, Inc., Seventh Third–Party Defendant.

No. 98 CV 1425 JM ARL.

United States District Court, E.D. New York.

Oct. 18, 1999.

136

Cyrus M. Diamond, Sullivan Papain Block McGrath & Cannavo, P.C., New York City, for Plaintiffs.

William E. Bell, Jones, Hirsch, Connors & Bull, P.C., New York City, for Stevedoring Systems, Inc. and Sea–Land Services, Inc.

LeRoy S. Corsa, DeOrchis, Walker & Corsa, LLP, New York City, Hanjin Shipping Company, Ltd. and Yang Ming Marine Transport Corp.

Edward Kenny, Kroll, Rubin, Fiorella, LLP, New York City, for Translink Shipping, Inc.

William White, White, Quinlan, Staley & Ledwith, Garden City, NY, for Trans American Trucking Service, Inc.

Frank J. Lourenso, Cullen & Dykman, Brooklyn, NY, P & L Marble, Inc.

Stephen A. Aschettino, Hodgson, Rus, Andrews, Woods & Goodyear, LLP, New York City, for Black Bullet Transports, Inc.

James M. Kenny, Kenny & Stearns, New York City, for Maher Terminals, Inc.

Memorandum of Decision and Order

MISHLER, District Judge.

Plaintiffs Kwan–Ho Lee[1] and his wife Susan Lee ("Plaintiffs"), filed this action against Hanjin Shipping Co. ("Hanjin") and Trans American Trucking Services, Inc. ("Trans American") in New York State Supreme Court, Queens County, on January 14, 1998 alleging damages resulting from injuries sustained when slabs of granite fell off of a truck striking Kwan–Ho Lee. On February 25, 1998, Hanjin petitioned this Court for removal pursuant to 28 U.S.C. § 1441. Hanjin asserted that this Court possessed subject matter jurisdiction based on diversity of the parties under 28 U.S.C. § 1332 insofar as Plaintiffs were residents of New York and Hanjin was a foreign corporation with its principle U.S. place of business in New Jersey. No party questioned this Court's subject matter jurisdiction.

On June 14, 1999, Plaintiffs filed an Amended Complaint adding as defendants Stevedoring Systems, Inc. ("SSI"), Black

1. On October 26, 1998, Susan Lee was substituted as guardian ad litem for Kwan–Ho Lee.

(See Order dated October 26, 1998.)

Bullet Transport, Inc. ("BBT"), Translink Shipping, Inc. ("Translink"), Yang Ming Marine Transport, Inc. ("Yang Ming"), Sea–Land Services, Inc. ("Sea–Land Services") and Maher Terminals, Inc. ("Maher Terminals"). On August 26, 1999, Maher Terminals, by letter to Magistrate Judge Arlene Lindsay, asserted that this Court lacks subject matter jurisdiction over this action because there are aliens on both sides of the lawsuit thus violating the long-standing requirement of complete diversity in alienage jurisdiction cases. Several parties responded to Maher Terminals' assertion and requested that discovery be stayed pending resolution of this issue. Magistrate Judge Lindsay referred the matter to this Court, at which time we granted the parties' request to stay discovery. (*See* Letter from the Court to the parties dated September 2, 1999).

The Court reviews its subject matter jurisdiction at the request of the parties pursuant to its authority under Federal Rule of Civil Procedure 12(h)(3). For the reasons set forth below, the Court dismisses Plaintiffs' claims against defendants Hanjin, Yang Ming and Translink for lack of subject matter jurisdiction.

### PARTIES

Plaintiffs are permanent resident aliens residing in the State of New York. (*See* Oct. 7, 1999 Letter of Cyrus M. Diamond to the Court). Hanjin is a Korean corporation with its worldwide headquarters in Seoul, Korea and its principal United States place of business in New Jersey. (*See* October 12, 1999 Letter of Michael E. Unger to the Court). Yang Ming is a Taiwanese corporation with its principal place of business in Taiwan. (See Second Oct. 12, 1999 Letter of Michael E. Unger to the Court). Translink is incorporated in the states of Washington and New York. (*See* Oct. 12, 1999 Letter of Edward F. Kenny to the Court). Trans American,

SSI, BBT, Sea–Land Services, and Maher Terminals are domestic corporations incorporated and having their principal places of businesses in states other than New York.

### DISCUSSION

Article III, section 2 of the United States Constitution provides in part that the judicial power of the United States shall extend to controversies "between a State, or the Citizens thereof, and foreign States, Citizens or Subjects". U.S. Const. art. III, § 2. This authority is commonly referred to as "alienage jurisdiction". Article III requires only minimal diversity among the parties when invoking alienage jurisdiction, *see* 15 James W. Moore et al., Moore's Federal Practice ("Moore's Federal Practice") § 102.12, 102.78[3][a], *i.e.*, there must be at least one plaintiff and one defendant whose citizenships are diverse. Therefore, alienage jurisdiction is constitutionally permissible so long as there is at least one alien party and at least one state or citizen of a state opposing the alien.

■ The diversity statute, 28 U.S.C. § 1332(a), however, requires complete diversity among the parties, *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), *i.e.*, every plaintiff must be diverse from every defendant. The second circuit has extended the complete diversity requirement to alienage jurisdiction. *See Corporacion Venezolana de Fomento*, 629 F.2d at 789–90. It is clear, therefore, that federal courts do not possess subject matter jurisdiction over lawsuits between aliens [2] even if non-alien parties are also present. *See IIT v. Vencap, Ltd.*, 519 F.2d 1001, 1015 (2d Cir.1975)(holding that diversity jurisdiction is defeated by "presence of aliens both as plaintiffs and as defendants"); *Ex Parte Edelstein*, 30 F.2d 636, 638 (2d Cir.)(Hand, J.)("an alien may not sue an alien in federal court"), *cert. denied*,

---

**2.** The term "alien" includes corporations incorporated in foreign states. *See, e.g., Buti v. Impressa Perosa, S.R.L.*, 935 F.Supp. 458, 462

(S.D.N.Y.1996) (finding no diversity jurisdiction over a suit between an alien corporation and a permanent resident alien).

279 U.S. 851, 49 S.Ct. 347, 73 L.Ed. 994 (1929).

The Court is faced with two issues of statutory construction in determining whether we possess subject matter jurisdiction over all claims in this action: first, whether 28 U.S.C. § 1332(c), as amended in 1958, applies to alien corporations so as to strip such corporations of their alien status, and; second, whether 28 U.S.C. § 1332(a), as amended in 1988, extends the jurisdiction of the district courts of the United States to cover civil actions between a permanent resident alien and a foreign corporation residing or doing business in a different state. The Court will address each in turn.

## 1. Alien corporations

■ The first question is whether Hanjin, a Korean corporation with its world headquarters in Seoul, Korea and its principal U.S. place of business in New Jersey[3], and Yang Ming, a Taiwanese corporation with its principal place of business in Taiwan[4], are considered aliens for jurisdiction purposes. The general rule is that an alien corporation is considered a citizen of its country of incorporation. *See Nat. Steam–Ship Co. v. Tugman*, 106 U.S. 118, 121, 1 S.Ct. 58, 59, 27 L.Ed. 87 (1882). Under this rule, therefore, Hanjin and Yang Ming would be considered aliens for jurisdiction purposes.

SSI and Sea–Land Services appear to argue that 28 U.S.C. § 1332(c) renders Hanjin a citizen of New Jersey because it has its principal U.S. place of business there.[5] Section 1332(c)(1) as amended in 1958 states:

> "For the purposes of this section . . . a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . ."

There has been much discussion about whether § 1332(c) applies to alien corporations. *See, e.g., Clifford Corporation, N.V. v. Ingber*, 713 F.Supp. 575, 576 (S.D.N.Y. 1989) (deciding after a lengthy analysis that § 1332(c) applies to alien corporations); 13B Charles Allen Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure ("Wright & Miller") § 3628 (West 1984 & 1997 Supp.). Even if § 1332(c) applies to alien corporations, however, it does not strip a corporation of its alien status. The second circuit is clear that § 1332(c) merely confers "dual citizenship" upon an alien corporation with its principal place of business in the United States. *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 790 (2d Cir.1980) (". . . even as-

---

3. A corporation can have only one principal place of business. *Bailey v. Grand Trunk Lines New England*, 805 F.2d 1097, 1100 (2d Cir.1986), *cert. denied*, 484 U.S. 826, 108 S.Ct. 94, 98 L.Ed.2d 54 (1987). For alien corporations, its worldwide principal place of business and not, its U.S. principal place of business is controlling. *Id.*

4. Counsel for Yang Ming asserts that Yang Ming operates in North America through its general agent, Solar International Shipping, Inc. (*See* October 12, 1999 Letter of Michael E. Unger to the Court). This fact is irrelevant to the jurisdiction analysis. As stated in the note above, a corporation can have only one principal place of business. Because Plaintiffs have not alleged that Yang Ming's principal place of business is in a state other than New York, the Court cannot assume that fact to obtain subject matter jurisdiction over a controversy against Yang Ming. The fact that Yang Ming has an agent in the United States does not alter this conclusion. *Hernandez v. Unso*, No. 97 CV 2793, 1997 WL 716550 (E.D.N.Y. Nov.14, 1997) (holding that diversity of alien corporation is not affected by presence of a general agent in a state); *see also Airlines Reporting Corporation v. S and N Travel, Inc.*, 58 F.3d 857, 862 (2d Cir.1995) (holding that where a company acts merely as an agent representing the interests of another, "the citizenship of the represented individuals controls for diversity purposes").

5. *See* Letter of William E. Bell to Magistrate Judge Lindsay dated August 27, 1999 at 3 ("Even if defendant Hanjin is deemed an alien notwithstanding 28 U.S.C. § 1332(c) deeming a corporation to be a citizen not only of the state of its incorporation, but also of the state of its principal place of business . . .").

suming such dual citizenship, the fact that alien parties were present on both sides would destroy complete diversity"), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981). The second circuit has gone so far as to uphold sanctions against an attorney for arguing that "whether or not you have aliens on both sides [of a litigation is] irrelevant once their principal places of business are here in New York." *International Shipping Co. v. Hydra Offshore, Inc.,* 875 F.2d 388, 392 (2d Cir.), cert. denied, 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989). In *International Shipping,* the court stated that "in *Venezolana* we concluded beyond cavil that, in this circuit, a corporation organized under the laws of a foreign nation remains an alien corporation under § 1332, even if its principal place of business is in one of the States." 875 F.2d at 392.

█ It is clear, then, that whether or not Hanjin can also be considered a citizen of New Jersey, it remains an alien corporation. Yang Ming, whose principal place of business is Taiwan, is also an alien corporation. Therefore, if Plaintiffs are deemed aliens for diversity purposes, the suit will involve an alien on each side of the controversy and this Court will lack jurisdiction over the action.

## 2. Permanent resident aliens

The second question before the Court is whether an amendment to the diversity statute addressing the status of permanent resident aliens has changed the longstanding rule of jurisprudence forbidding suits between aliens. In 1988 the Judicial Improvements Act amended 28 U.S.C. § 1332(a) to add the following language (the "Amendment"):

> "For purposes of this section...an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled."

The parties here seem to agree that the Amendment does not rid the permanent resident alien of his alien status, but rather, at most, confers on him a dual status— that of alien and citizen of a state. (*See* Letter of William E. Bell to the Court dated September 3, 1999 at 2) ("[Hanjin] may be deemed either a citizen of New Jersey or an alien."); Letter of James M. Kenny to Magistrate Judge Lindsay dated August 26, 1999 (despite plain language of the statute, "plaintiffs and...Hanjin are aliens"). The parties disagree, however, on whether the alternative status should be invoked to grant jurisdiction where it can be granted or to deny jurisdiction where it can be denied.

The Amendment has been interpreted in three ways. First, at least one court has interpreted the language literally, extending "citizenship", as that term is used both in 28 U.S.C. § 1332 and Article III, Section 2 of the U.S. Constitution, to permanent resident aliens. *Singh v. Daimler–Benz, A.G.,* 800 F.Supp. 260, 262 (E.D.Pa. 1992). Such a reading may, however, lead to unconstitutional applications in cases where a permanent resident alien residing in state A sues only a permanent resident alien residing in state B. In such cases, the lawsuit would be comprised solely of aliens, thus exceeding the limits of Article III. *See* 15 Moore's Federal Practice § 102.78[2] ("... any interpretation of the [Amendment] that would provide diversity jurisdiction for a case solely involving aliens would be unconstitutional").

A more cautious, though still problematic, approach was taken by the third circuit in *Singh v. Daimler–Benz, A.G.,* 9 F.3d 303 (3d Cir.1993). There, the court held that the Amendment should be read literally only where there is at least one citizen of the United States present as an additional party, thus satisfying the requirements of minimal diversity. The court held that because minimal diversity satisfies the constitutional directive, Congress was permitted to abrogate the requirement of complete diversity in alienage jurisdiction cases. *Id.* at 311.

*Singh* has been criticized, however, for its limited holding. The court itself recognized the potential for unconstitutional application of the Amendment where a permanent nonresident alien sues only a permanent nonresident alien from another state. *Id.* at 312. Detractors note that *Singh*'s interpretation "is a hybrid, a literal interpretation of the [Amendment] that stops short of its logical conclusion out of a concern that it would be found unconstitutional". *Engstrom v. Hornseth,* 959 F.Supp. 545, 553 (D.Puerto Rico 1997).

Finally, several courts, mindful of the constitutional problems discussed above, have held that the literal language of the statute applies only in cases in which a permanent resident alien residing in state A sues a citizen of state A, a so-called "suit between neighbors". *See, e.g., Lloyds Bank PLC v. Norkin,* 817 F.Supp. 414, 419 (S.D.N.Y.1993); *Engstrom,* 959 F.Supp. at 553. Prior to the Amendment, such cases were brought in federal court pursuant to 28 U.S.C. § 1332(a)(2) as an action between a citizen of a State and a citizen of a foreign state. 28 U.S.C. § 1332(a)(2). However, deeming the permanent resident alien a citizen of state A pursuant to the plain language of the Amendment would destroy diversity in such cases. Unlike the first two interpretations which would expand the scope of federal courts' alienage jurisdiction, this interpretation would limit it.

The question of how to interpret the Amendment is not a new one for the courts, but does seem to be a new one for this district. It was been stated as follows:

"...the language with which Congress sought to eliminate alienage jurisdiction 'between neighbors' also seems to lend itself to an entirely unintended and almost surely unconstitutional interpretation that, in addition, represents a break with an unbroken line of precedent stretching back to the beginning of the nineteenth century. The question is

whether or not the Court must adopt an interpretation that does violence to the Constitution, long-standing precedent, or the intent of Congress." *Engstrom,* 959 F.Supp. at 551.

The answer lies in which of the three statutory constructions of the Amendment discussed above most closely matches Congress's intent, assuming such intent would result in a constitutional application. The Supreme Court has noted that "in rare cases the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters, and those intentions must be controlling." *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). "[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems", a court should "construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988).

The literal readings of the Amendment espoused under the first two approaches would create a new class of jurisdiction where none existed before. The Judiciary Act of 1789 was declared unconstitutional because the Supreme Court feared it might permit suits in federal court between two aliens. *See Hodgson v. Bowerbank,* 5 Cranch 303, 9 U.S. 303, 3 L.Ed. 108 (1809); 13B Wright & Miller § 3604. Since then, courts have consistently held that jurisdiction over suits between aliens exceeds the constitutional grant of judicial power over suits "between a State, or the Citizens thereof, and foreign States, Citizens or Subjects." *See, e.g., Kramer v. Caribbean Mills,* 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969); *Corporacion Venezolana de Fomento,* 629 F.2d at 790; *Ex Parte Edelstein,* 30 F.2d 636.

Far from expanding the judicial caseload, as would result from the *Singh* deci-

sions, the Judicial Improvements Act was intended to make "modest adjustments to the scope of diversity jurisdiction to relieve the caseload pressures on the Federal Courts". 131 Cong. Rec. 31054 (1988). Along with the amendment to § 1332(a) at issue here, the Act also increased the amount-in-controversy requirement from $10,000 to $50,000, further reducing the federal courts' diversity caseload. Congress's intention that the Amendment limit federal courts' diversity jurisdiction is supported by the legislative history accompanying the Amendment:

"There is no reason why actions involving persons who are permanent residents of the United States should be heard by federal courts merely because one of them remains a citizen or subject of a foreign state or has not yet become a citizen of the United States. Accordingly, the Conference agreed to recommend that Congress amend 28 U.S.C. § 1332(a) to treat a permanent resident alien as a citizen of the state of his or her domicile." Report of the Proceedings of the Judicial Conference of the United States 77 (Sept. 14, 1988).[6]

Clearly, Congress enacted the Amendment to address the "suits between neighbors" problem, and not to abrogate 200 years of jurisprudence on complete diversity, and do so without comment. As the D.C. Circuit Court of Appeals noted, the holding of the *Singh* decisions "means that Congress would have acted without regard to the potential constitutional ramifications of its action or was unpersuaded of the existence of such ramifications. Neither conclusion seems warranted." *Saadeh,* 107 F.3d at 61.

Several courts that have addressed this issue have similarly found fault with the *Singh* analysis. *See, e.g., Engstrom,* 959 F.Supp. at 547; *Buti,* 935 F.Supp. at 462; *China Nuclear Energy Industry Corp. v. Andersen, LLP,* 11 F.Supp.2d 1256, 1258 (D.Colo.1998); *see also Helmut J. Unkel Limited v. Tay,* No. C 94–240573, 1995 WL 55330 (N.D.Cal.1995), at * 1; *Lloyds Bank,* 817 F.Supp. at 419.

■ We agree with these courts and hold that the Amendment did not confer diversity jurisdiction over a lawsuit between an alien on one side and an alien and a citizen on the other side, regardless of the residence status of the aliens. Despite its plain language, the Amendment does not rid Plaintiffs of their alien status. Therefore, because both Plaintiffs on the one side and Hanjin and Yang Ming on the other are aliens, this Court lacks jurisdiction over an action between these parties.

### 3. Application of the 1988 Amendment

■■ Having ruled above that the 1988 Amendment should only be applied to "suits between neighbors", we now find that such a scenario is presented here in Plaintiffs' action against Translink. Plaintiffs, permanent resident aliens residing in New York, have sued Translink which is incorporated in New York.[7] The 1988 Amendment ensures that Plaintiffs may not sue Translink in federal court merely because Plaintiffs have not yet obtained United States citizenship. Accordingly, this Court lacks jurisdiction over Plaintiffs' action against Translink due to the lack of diversity of citizenship of the parties.

**6.** For a more complete review of the legislative history of the Amendment, *see Saadeh v. Farouki,* 107 F.3d 52, 58–60 (D.C.Cir.1997).

**7.** Translink is incorporated in both New York and Washington. (*See* Oct. 12, 1999 Letter of Edward F. Kenny to the Court). Where a corporation is incorporated in more than one state, it is deemed a citizen of each such state, thus limiting the federal fora for an adversary of such corporation. *See Oslick v. Port Au-*

*thority of New York and New Jersey,* 83 F.R.D. 494, 496 (S.D.N.Y.1979) (holding that "there could be no complete diversity where the defendant multi-state corporation and the plaintiff had a common citizenship in either of the states of incorporation"); 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed a citizen of *any* State by which it has been incorporated")(emphasis added).

### 4. Indispensable Parties

When faced with a situation in which the presence of some defendants destroys a court's diversity jurisdiction over an entire case, the court has two options—dismiss the entire case or dismiss the action against the parties whose presence destroys diversity. Federal Rule of Civil Procedure 19(b) provides that in determining whether a party is indispensable to the action, the court should consider:

> "first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Fed.R.Civ.P. 19(b).

Here, Hanjin, Yang Ming and Translink are three of eight alleged joint tortfeasors. "It is settled federal law that joint tortfeasors are not indispensable parties". *Samaha v. Presbyterian Hospital,* 757 F.2d 529, 531 (2d Cir.1985). As the Supreme Court noted, "[I]t has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit...[A] tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability." *Temple v. Synthes Corp.,* 498 U.S. 5, 7, 111 S.Ct. 315, 112 L.Ed.2d 263 (1990). Because defendants in this action would be jointly and severally liable for any judgment of damages [8], dismissal of Hanjin, Yang Ming and Translink would not prejudice the remaining defendants. If any of the remaining defendants are found liable, they may seek contribution from Hanjin, Yang Ming and Translink in a separate action. Accordingly, Hanjin, Yang Ming and Translink are not indispensable parties under Rule 19(b).

## CONCLUSION

For the reasons stated above, Plaintiffs' claims against defendants Hanjin, Yang Ming and Translink are DISMISSED. The stay on discovery issued by this Court on September 2, 1999 is lifted.

SO ORDERED.

---

8. New York C.P.L.R. § 1601 (McKinney 1967 and 1999 Supp.), which protects certain defendants from joint and several liability if they are found to have caused less than 50 percent of plaintiff's harm, is inapplicable here. The statute does not apply "in a diversity action in federal court when the court is unable to join other potential tortfeasors because such joinder would destroy diversity jurisdiction." *Roland v. Marriott International Corp.,* No. 94 Civ. 7720, 1995 WL 358631 (S.D.N.Y. June 15, 1995), at * 3 n. 2.